**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* THE TARBELL GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN ACADEMY OF ENVIRONMENTAL ENGINEERS AND SCIENTISTS INC. *et al.,*<br><br>Defendants. | Civ. No. 1:25-cv-00915-MJM |

**DEFENDANT CRISFIELD AREA CHAMBER OF COMMERCE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Crisfield Area Chamber of Commerce, Inc. submits this memorandum in support of its motion to dismiss.

## Table of Contents

INTRODUCTION ........................................................................................................ 1

FACTUAL ALLEGATIONS ........................................................................................ 2

PROCEDURAL BACKGROUND ................................................................................ 4

LEGAL STANDARDS .................................................................................................. 5

ARGUMENT ................................................................................................................. 6

I. Tarbell Fails to State Plausible Claims under Rules 8 and 12(b)(6) and to Plead with the Particularity Required under Rule 9(b). ................................................................ 6

A. Tarbell Fails to Plead Scienter with Particularity. ................................................ 6

B. Tarbell Does Not Plausibly Allege Materiality. ..................................................... 8

C. Tarbell's Reverse False Claim Theory Fails to Plausibly Allege an Independent Obligation. .................................................................................................................. 10

II. The Public Disclosure Bar Requires Dismissal. ..................................................... 11

A. The Allegations in the FAC Were Publicly Disclosed Through Qualifying Channels. .................................................................................................................... 12

B. The Publicly Disclosed Information Is the Basis of Tarbell's Case. ...................... 17

C. Tarbell's Allegations About Public SBA Forms Add Nothing to the FAC. ............ 19

D. Tarbell Is Not an Original Source. ......................................................................... 23

III. Dismissal Should Be with Prejudice, as any Amendment Would Be Futile. ......... 25

CONCLUSION ............................................................................................................. 26

## Table of Authorities

### Cases

*Aljizzani v. Middle East Broad. Networks, Inc.*, 178 F.4th 863 (4th Cir. 2026) ..............................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................5

*Bell Atl. Corp v. Twombly*, 550 U.S. 554 (2007) ..............................5

*Bowers v. Legum & Norman Realty, Inc.*, 776 F. Supp. 3d 294 (D. Md. 2025) ..............................6

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ..............................5, 7

*Hawaii ex rel. Torricer v. Liberty Dialysis-Haw. LLC*, 512 F. Supp. 3d 1096 (D. Haw. 2021) ......11

*In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743 (4th Cir. 2021). ..............................25

*United States ex rel. Akeel & Valentine, PLC v. Napleton Auto Group, Inc.*,
No. 24 CV 00047, 2025 WL 2930796 (N.D. Ill. Oct. 15, 2025) ..............................25

*United States ex rel. Beauchamp v. Academi Training Ctr., LLC*,
816 F.3d 37 (4th Cir. 2016) ..............................12, 13, 16

*United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293 (4th Cir. 2017) ..............................23

*United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162 (D. Md. 2019) ............10

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d Cir. 2021) ..............................11

*United States ex rel. Lesko v. Minnesota Orchestral Ass'n*,
Civ. No. 23-3216, 2025 WL 1953120 (D. Minn. July 16, 2025) ..............................15, 16, 25

*United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625 (D. Md. 2019) ...........12

*United States ex rel. May v. Purdue Pharma, L.P.*, 811 F.3d 636, 642 (4th Cir. 2016) ..................11

*United States ex rel. Relator LLC v. Cardinalli*, 833 F. Supp. 3d 1072 (C.D. Cal. 2026) ..14, 16, 24

*United States ex rel. Relator LLC v. Erskine*,
No. 22cv1158-LL-AHG, 2025 WL 796621 (S.D. Cal. Feb. 25, 2025) ..............................15

*United States ex rel. Relator LLC v. Hodges*,
No. 2:22-cv-05200-FWS-GJS, 2025 WL 3724906 (C.D. Cal. Nov. 7, 2025) ..............................15

*United States ex rel. Relator LLC v. Kasam*,
No. 2:22-cv-05198-HDV-JCx, 2025 WL 3724905 (C.D. Cal. Dec. 11, 2025) .............. 15, 16

*United States ex rel. Relator LLC v. Nations Direct Mortgage, LLC*,
No. 2:22-cv-04784-SPG-MAA, 2026 WL 453464 (C.D. Cal. Jan. 5, 2026) .................. 14, 16

*United States ex rel. Relator LLC v. Shupe*,
No. 2:23-cv-00504-WLH, JPR, 2025 WL 4000282 (C.D. Cal. Nov. 13, 2025) ............ 16, 24

*United States ex rel. Relator LLC v. Sunshine*,
No. 8:23-cv-00134-JVS-ADS, 2025 WL 2428470 (C.D. Cal. June 30, 2025) ................ 15, 16

*United States ex rel. Relator LLC v. Uhler*,
No. 2:23-cv-00499-CAS-MBKx, 2025 WL 4350115 (C.D. Cal. Oct. 6, 2025).....................16

*United States ex rel. Relator, LLC v. Kellog*,
No. 23-cv-118-CAB-BLM, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025)........................ 15, 25

*United States ex rel. Relator, LLC v. Kootstra*,
No. 1:22-cv-00924-TLN-CDB, 2024 WL 3666470 (E.D. Cal. Aug. 6, 2024)............... 15, 25

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) ...................................................5

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) .............18

*United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022)...........................................7

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008) ...... 6, 7, 25

*Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) ................................8, 9

*William v. AES Corp.*, 28 F. Supp. 3d 553 (E.D. Va. 2014).........................................................7

*WP Co. LLC v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1 (D.D.C. 2020) ...............................13

**Statutes**

31 U.S.C. § 3729 ............................................................................................................ 1, 6, 12

31 U.S.C. § 3730 ........................................................................... 5, 12, 13, 15, 19, 20, 26, 27

Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136
(Mar. 27, 2020) ..........................................................................................................................2

Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, Consolidated
Appropriations Act, 2021, Pub. L. 116-260, § 318, 134 Stat. 1182 (Dec. 27, 2020)...........18

Pub. Law 116-136, 134 Stat. 281, 534-40 (2020).......................................................................15

**Rules**

Fed. R. Civ. P. 9(b) .......................................................................................1, 6, 7, 8, 29

Fed. R. Civ. P. 12(b)(6) ..........................................................................1, 5, 6, 7, 8, 14, 27, 29

Fed. R. Evid. 201 ...........................................................................................................14

## INTRODUCTION

Relator The Tarbell Group, LLC ("Tarbell") is a Virginia limited liability company that did not exist until 2024, long after the COVID-era Paycheck Protection Program ("PPP") loans that it complains of were applied for, forgiven, and publicly disclosed to the world. *See* Exhibits Q and R. Tarbell was formed for the purpose of filing a series of essentially identical "*qui tam*" actions under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, across the country accusing hundreds of nonprofits assembled entirely from two public sources: the PPP loan data of the Small Business Administration ("SBA"), which is mirrored on PandemicOversight.gov and republished by ProPublica, and the nonprofits' own IRS Forms 990 tax returns, published on the IRS's website. The theory is always the same: that a tax-exempt organization certified PPP eligibility on a date when its 501(c) subsection had not yet been made eligible. It is pleaded the same way against every defendant: by dropping the organization's name into a spreadsheet containing simply the public information that the SBA publicly disclosed years prior to this litigation. These are exactly the sorts of "parasitic" or "opportunistic" *qui tam* suits that the public disclosure bar of the False Claims Act exists to stop, and Tarbell pleads at a level of generality that Rule 9(b) does not tolerate.

This Court should dismiss the First Amended Complaint in its entirety and with prejudice for two reasons: *First*, Tarbell does not plead scienter or materiality with the particularity demanded for claims alleging fraud under Rule 12(b)(6) and 9(b). Rather, the complaint contains exactly the sort of conclusory boilerplate that Rule 9(b) disallows in cases that sound in fraud. *Second*, Tarbell's complaint recycles information that has already been disclosed in the public records of the Government (the PPP loan data published by the SBA

and the federal Pandemic Response Accountability Committee ("PRAC") and the Form 990 nonprofit tax returns published by the Internal Revenue Service) and reported by news media, such as ProPublica.org, which republished all of the PPP loan data. The Public Disclosure Bar bars the recycling of already-disclosed information unless the relator is the original source, which Tarbell is not and does not claim to be. Because Tarbell cannot cure these defects by again amending its complaint, this Court should dismiss the First Amended Complaint with prejudice.

## FACTUAL ALLEGATIONS

To provide economic relief during the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (Mar. 27, 2020), which established the PPP. The SBA implemented the PPP, which took the form of private loans guaranteed, forgiven, and reimbursed by the SBA. *See* ECF 8 (the "FAC") ¶ 74. Tarbell alleged that organizations that are tax exempt under IRC § 501(c)(6) became eligible for PPP loans on December 27, 2020. *See* FAC, ECF 8 ¶ 82. Defendant Crisfield Chamber is a § 501(c)(6) organization. *See* FAC, ECF 8 ¶ 12.

The FAC's attached table sets forth the following loan data for Defendant Crisfield Chamber:

| Draw | Date Approved | Loan Amount | Forgiveness Date | Amount Forgiven |
|---|---|---|---|---|
| 1st | 6/13/2020 | $10,248.00 | 9/27/2021 | $10,377.71 |
| 2nd | 2/19/2021 | $9,855.00 | 3/9/2022 | $9,956.79 |

FAC, ECF 8, Attachment at 2.

The Crisfield Chamber's first loan draw was approved before December 27, 2020, but its second loan draw was approved after Tarbell recognizes that 501(c)(6) nonprofit organizations became eligible to receive PPP loans.

In its First Cause of Action, Tarbell claims that, in its application for a first-draw PPP Loan, Crisfield Chamber "certified that 'The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program.'" FAC, ECF 8 ¶ 94. Tarbell claims that this was "false and known by the certifying defendant and the individual defendants acting on its behalf to be false within the meaning of the False Claims Act" because the Defendant was exempt from taxation under a subsection of Section 501(c) of the Internal Revenue Code that was excluded from PPP eligibility until after the date on which SBA approved the loan…" FAC, ECF 8, ¶ 97. Tarbell does not identify any "individual defendants acting on" Crisfield Chamber's behalf; rather, it names "Unknown John or Jane Does" it claims might be "directors, officers, employees, or otherwise agents" through whom the Chamber acted. FAC, ECF 8, ¶ 73.

For its Second Cause of Action, Tarbell claims those entities that received a second-draw PPP loan, even if their type of 501(c)(6) organization had become eligible at the time, was nevertheless "fruit of the poisonous tree" due to ineligibility for a first-draw loan. *See* FAC, ECF 8, ¶ 76. Tarbell claims that the Crisfield Chamber "certified 'The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans . . .'"

FAC, ECF 8 ¶ 101. Tarbell alleges material falsity in this certification "because its first-draw PPP Loan had been unlawfully obtained and receipt of a first-draw loan was a prerequisite to receive a second-draw loan, rendering the second-draw PPP Loan unlawful as 'fruit of the poisonous tree.'" FAC, ECF 8 ¶ 103.

For its Fourth Cause of Action, Tarbell claims that, by applying for forgiveness of the first-draw PPP loan, the Crisfield Chamber materially and falsely "certified: 'The Borrower has complied with all requirements in the Paycheck Protection Program Rules (Sections 7(a)(36), (7)(a)(37), and 7A of the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of this application)'", FAC, ECF 8 ¶ 113, which Tarbell alleges that Crisfield Chamber, and all other defendants certified "is true and correct in all material respects." FAC, ECF 8 ¶ 114.

For its Fifth Cause of Action, Tarbell likewise claims that, by applying for forgiveness of its second-draw PPP loan, the Crisfield Chamber materially and falsely certified that "The Borrower has complied with all requirements in the Paycheck Protection Program Rules (Sections 7(a)(36), (7)(a)(37), and 7A of the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of this application)." FAC, ECF 8 ¶ 122.

(Tarbell's Third and Sixth Causes of Action are only brought against 501(c)(7) "Private Club" defendants. Tarbell does not include the Crisfield Chamber among such defendants. *See* FAC, ECF 8 ¶¶ 105-110, 127-134.)

**PROCEDURAL BACKGROUND**

Tarbell filed its original Complaint under seal on March 19, 2025. *See* Compl. ECF 1. The Government was deemed to have not intervened and, on March 17, 2026, the

Complaint was unsealed and Tarbell directed to proceed pursuant to 31 U.S.C. § 3730(c)(3). ECF 6. In response to a June 26, 2026 order directing Tarbell to show cause why the matter should not be dismissed for lack of prosecution, *see* ECF 7, Tarbell filed its First Amended Complaint (FAC) on July 9, 2026, *see* ECF 8, and recently began soliciting waivers of service from the various defendants herein.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. While the Court must accept well-pleaded factual allegations, it disregards "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim under the False Claims Act requires proof that (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a "claim"). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999). The scienter required to be proven includes "three mental states … actual knowledge, deliberate ignorance, or recklessness." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749-50 (2023) (citing 31 U.S.C. § 3729(b)(1)(A)(i), (ii), (iii)). Such claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which require Tarbell to "state with particularity the circumstances

constituting fraud or mistake," though knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). This is often "referred to as the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). A "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5.

## ARGUMENT

### I. Tarbell Fails to State Plausible Claims under Rules 8 and 12(b)(6) and to Plead with the Particularity Required under Rule 9(b).

All claims under the False Claims Act sound in fraud and, thus, are subject to the heightened pleading requirements of Rule 9(b). Tarbell fails to meet even the plausibility requirement that Rules 8 and 12(b)(6) require to state causes of action against the Crisfield Chamber and falls well short of meeting the particularity required to allege fraud under Rule 9(b). "The purpose of Rule 9(b) is 'to prevent frivolous suits, stop fraud actions where everything is learned after discovery (i.e., fishing expeditions), and to protect defendants' reputations.'" *Bowers v. Legum & Norman Realty, Inc.*, 776 F. Supp. 3d 294, 304 (D. Md. 2025) (quoting *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022)).

#### A. Tarbell Fails to Plead Scienter with Particularity.

To satisfy Rule 9(b) Tarbell must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson,* 525 F.3d at 379 (citation and internal quotation marks omitted) (affirming denial of motion to amend complaint as futile

where proposed amended complaint failed to state a claim and lacked the particularity required by Rule 9(b)). "These circumstances are often referred to as the who, what, when, where, and how of the alleged fraud." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citing *Wilson*, 525 F.3d at 379) (internal quotation marks omitted). A "lack of compliance with Rule 9(b)'s pleading requirements is treated as failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5; *see also William v. AES Corp.*, 28 F. Supp. 3d 553, 573 (E.D. Va. 2014) (citing *Harrison*).

Here, Tarbell fails to describe any specific facts relating to the alleged false representations Crisfield Chamber made to obtain first and second draw PPP loans or those loans' forgiveness, other than the conclusory allegation that all defendants knowingly made false certification of their eligibility. Tarbell does not state who made these false statements, when they were made, to whom they were made, or where they were made. Other than parroting the pre-printed certifications on SBA forms in effect at the time of each loan or forgiveness application, Tarbell makes no allegations concerning what the Crisfield Chamber presented to the Government in its applications. Most importantly, Tarbell pleads no facts that plausibly suggest any person at the Crisfield Chamber or acting on its behalf actually knew that it was not yet eligible for a PPP loan at the time it applied or acted with indifference or recklessness in this regard. Instead, Tarbell only makes conclusory allegations and legal conclusions concerning the alleged false claims, making the identical allegations as to all 69 unrelated defendants herein. Such generalities and formulaic recitations of False Claim Act elements do not meet the particularity required to plausibly allege fraud and are

precisely the types of allegations that *Iqbal* and *Twombly* reject. By not plausibly alleging the "who, what, when, where, and how" of the fraud it claims, Tarbell's claims must fail.

**B. Tarbell Does Not Plausibly Allege Materiality.**

Materiality is an element of a False Claims Act violation and Tarbell's FAC contains no facts as to how a misrepresentation that the Crisfield Chamber was eligible for PPP funding a few months before it became eligible was material to any decision by the Government to fund a first-draw PPP loan before the Crisfield Chamber and other 501(c)(6) organizations became eligible, to fund a second-draw PPP loan after 501(c)(6) organizations were eligible, or to forgive both loans. As to all four allegedly false certifications, Tarbell only states "[e]ach certification described above was required as a material prerequisite" to obtain a PPP loan or forgiveness thereof. FAC, ECF 8 ¶¶ 96, 102, 116, 124. No facts support this conclusory statement.

Such generalities fail to state materiality plausibly. The Supreme Court has recognized that "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable" under the False Claims Act. *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). There, the Supreme Court held:

> The materiality standard is demanding. The False Claims Act is not "an all-purpose antifraud statute," *Allison Engine [Co., Inc. v. United States ex rel. Sanders*], 553 U.S. [662, ]672, 128 S.Ct. 2123 [(2008)] or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial. See *United States ex rel.*

> *Marcus v. Hess,* 317 U.S. 537, 543, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (contractors' misrepresentation that they satisfied a non-collusive bidding requirement for federal program contracts violated the False Claims Act because "[t]he government's money would never have been placed in the joint fund for payment to respondents had its agents known the bids were collusive"); see also *Junius Constr. [Co. v. Cohen] ,* 257 N.Y. [393, ] 400, 178 N.E. [672, ]674 [(1931)] (an undisclosed fact was material because "[n]o one can say with reason that the plaintiff would have signed this contract if informed of the likelihood" of the undisclosed fact).

*Id.* at 194.

Tarbell's FAC pleads no facts showing that any alleged misrepresentation about the Crisfield Chamber's eligibility affected the SBA's decision to approve or forgive any of the Crisfield Chamber's loans. Certainly, it defies logic to suggest that the Government's decision to approve the Crisfield Chamber's second-draw PPP loan, approved after December 27, 2020, the date on which 501(c)(6) organizations became eligible, was materially influenced by a prior certification of premature eligibility on the first-draw loan.

Rather, the FAC read as a whole suggests that the SBA approved two rounds of PPP loans and then forgave them, with full knowledge of the borrowers' identities and tax-exempt statuses. The FAC suggests that the SBA approved and forgave these loans in the ordinary course without taking any adverse action against the Crisfield Chamber due to any alleged ineligibility issue. Such course of conduct suggests that any claimed misrepresentation as to first-draw PPP loan eligibility was immaterial to the SBA. *See Escobar*, 579 U.S. at 195 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.").

### C. Tarbell's Reverse False Claim Theory Fails to Plausibly Allege an Independent Obligation.

Unlike a "direct false claim" which is designed to extract money from the Government, a "reverse false claim" under Section 3729(a)(1)(G) creates liability for the knowing use of a false record or statement material to an obligation to pay money to the Government so as to evade a debt owed to the Government. A viable reverse false claim must rest on an obligation to pay that exists independently of the fraudulent conduct through which the defendant allegedly obtained the government funds.

Counts Four and Five of Tarbell's FAC are premised upon the theory that, by certifying it was entitled to forgiveness of the same PPP loans Tarbell says it fraudulently obtained, the Crisfield Chamber evaded an obligation to repay to the Government the same funds that were the subject of direct false claim allegations under Counts One and Two. This Court has rejected efforts of relators to redundantly assert a reverse false claim premised upon the theory that a defendant has an obligation to repay funds that are the subject of a direct false claim:

> Construed most favorably to Relators, the theory of liability rests on the proposition that had the Government known of Defendants' FCA violations, the Defendants would be required to reimburse the Government for monies disbursed under the contract. However, as a matter of law the Government's ability to pursue reimbursement for overpayments or fraudulently induced payments does not constitute an "obligation." Relators cannot properly allege a reverse false claim that is premised on the same conduct as Relators' claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B). Accordingly, Relators fail to plead an "obligation" owed to the Government.

*United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 191 (D. Md. 2019) (citations and internal quotation marks omitted), *see also United States ex rel. Foreman v.*

*AECOM*, 19 F.4th 85, 119-20 (2d Cir. 2021), *Hawaii ex rel. Torricer v. Liberty Dialysis-Haw. LLC*, 512 F. Supp. 3d 1096, 1119-20 (D. Haw. 2021).

Here, Tarbell alleges no independent obligation on the part of the Crisfield Chamber to repay the PPP loans it claims were falsely obtained in Counts One and Two. As such, Tarbell fails to plead any independent "obligation" owed to the Government. Counts Four and Five should be dismissed for failing to plausibly plead any independent obligation to pay moneys to the Government sufficient to support a reverse false claim under 31 U.S.C. § 3729(a)(1)(G).

## II. The Public Disclosure Bar Requires Dismissal.

The False Claims Act's public disclosure bar directs the Court to "dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in (i) a federal criminal, civil, or administrative hearing; (ii) a federal report, hearing, audit, or investigation, or (iii) in the news media. 31 U.S.C. § 3730(e)(4)(A). The public disclosure bar exists "to prevent 'parasitic' *qui tam* actions in which relators, rather than bringing to light independently-discovered information of fraud, simply feed off of previous disclosures of government fraud." *United States ex rel. May v. Purdue Pharma, L.P.*, 811 F.3d 636, 642 (4th Cir. 2016) (quoting *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1347 (4th Cir. 1994)). If the public disclosure bar applies, this case may proceed only if Tarbell establishes that it is an "original source" of the information, meaning that the Relator either (i) disclosed the information to the Government before the public disclosure or (ii) "has knowledge

independent of and materially adds to the publicly disclosed allegations or transactions" and disclosed this information to the Government before filing suit. 31 U.S.C. § 3730(e)(4)(B).

Courts applying the public disclosure bar thus ask three questions "(1) is there a qualifying public disclosure? (2) if yes, is the disclosed information the basis of the relator's suit? (3) and, if so, is the relator the original source of that information?" *See United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625, 646 (D. Md. 2019). Although the public disclosure bar is an affirmative defense rather than a jurisdictional bar since 2010 amendments to Section 3730, *see United States ex rel. Beauchamp v. Academi Training Ctr., LLC*, 816 F.3d 37, 40 (4th Cir. 2016), "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Maharaj*, 427 F. Supp. 3d at 639 (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). In ruling on a motion to dismiss under Rule 12(b)(6), "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Id.* at 640-41.

The public disclosure bar applies to this case. Tarbell is not an original source. Accordingly, the Court must dismiss the FAC.

### A. The Allegations in the FAC Were Publicly Disclosed Through Qualifying Channels.

There were qualifying public disclosures through "federal reports" and "news media" reports of the PPP loans to Defendant Crisfield Chamber (and all defendants herein) prior to the filing of this action by Tarbell (and even prior to the formation of Tarbell as a limited liability company).

The loan information that Tarbell used to identify the nonprofit defendants targeted in this action is publicly disclosed. Both the SBA and the website PandemicOversight.gov publish the dataset of all PPP loans. This information has been publicly disclosed since a court order following a FOIA suit brought by news media against the SBA. *See WP Co. LLC v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 27-28 (D.D.C. 2020) (ordering the SBA to "release the names, addresses, and precise loan amounts of all individuals and entities that obtained PPP … loans by November 19, 2020.").

Defendant Crisfield Chamber, contemporaneously with the filing of its motion to dismiss, has asked this Court to take judicial notice of the PandemicOversight.gov dashboard, *see* Exhibit A, and the SBA PPP data set. *See* Exhibits B, C, D. Both constitute "federal reports" within the meaning of the public-disclosure bar. The Fourth Circuit has recognized the expansive interpretation of the term "public disclosure" under the Supreme Court's case law:

> Courts have unanimously construed the term "public disclosure" to include websites and online articles. *See Schindler Elevator Corp. v. United States ex rel. Kirk,* 563 U.S. 401, 408 (2011) ("The other sources of public disclosure in § 3730(e)(4)(A), especially 'news media,' suggest that the public disclosure bar provides 'a broad sweep.'"); *United States ex rel. Osheroff v. Humana Inc.,* 776 F.3d 805, 813 (11th Cir. 2015) (concluding that newspapers and publicly available websites qualified as "news media" under the public disclosure provision)).

*Beauchamp*, 816 F.3d at 43 n.6 (cleaned up).

Here, PandemicOversight.gov is an official website of the Government, which was statutorily directed to be created by the Pandemic Response Accountability Committee by the passage of Section 15010(b) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. *See* Pub. Law 116-136, 134 Stat. 281, 534-40 (2020). Through this website, the

general public can search for data on all entities who have received PPP loans and obtain the very data that Tarbell includes in its complaint. Applying *Schindler Elevator*'s broad definition of "report", the information provided by PandemicOversight.gov clearly qualifies as a "federal report" within the meaning of the public disclosure bar of Section 3730(e)(4)(A). *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011). So, too, are the files constituting the SBA public data set made available in response to a FOIA request, which provide overlapping data to that more easily accessible on the PandemicOversight.gov website. The SBA data set is located in a publicly accessible database found at https://data.sba.gov/dataset/ppp-foia which houses several large comma separate values ("CSV") files with details on every PPP borrower, including each of the defendants in this action. *See* Exhibit B. The Crisfield Chamber's data are found in the CSV file titled "public_up_to_150k_6_240930.csv" at rows 605488 and 607659. *See* Exhibits C & D. For each PPP loan, these data files include the loan number, date approved, the borrower's name and address, forgiveness amounts, forgiveness dates, lender names, business types, and the NAICS codes.[1] The Supreme Court has recognized that an "agency response to a FOIA request falls within the ordinary meaning of 'report'" under the False Claims Act. *Schindler Elevator*, 563 U.S. at 410-11.[2] Thus, that the Crisfield Chamber had received the first draw

[1] NAICS stands for "North American Industry Classification System" and NAICS codes are the standard used by Federal statistical agencies in classifying business establishments for the purposes of organizing data related to the U.S. economy. The Crisfield Chamber's NAICS code of 813910 corresponds to "business associations." *See* Office of Budget and Management, NORTH AMERICAN INDUSTRY CLASSIFICATION SYSTEM, UNITED STATES 2017 at https://www.census.gov/naics/reference_files_tools/2017_NAICS_Manual.pdf

[2] Other district courts have held that PandemicOversight.gov is a "federal report" for purposes of the FCA's public disclosure bar. *See United States ex rel. Relator LLC v. Cardinalli*, 833 F. Supp. 3d 1072, 1079 (C.D. Cal. 2026) ("The federal government's (publicly-available) official oversight website, PandemicOversight.gov, and the SBA website list [defendant] as the recipient of a PPP loan…. Courts have consistently held that publicly-accessible federal databases of this kind qualify as 'federal reports' under the FCA."), *United States ex rel. Relator LLC v. Nations Direct Mortgage, LLC*, No. 2:22-cv-04784-SPG-MAA, 2026 WL 453464, at *3 (C.D. Cal. Jan. 5, 2026) ("Based on the broad definition of 'federal report,' … the Court finds that PandemicOversight.gov qualifies as a federal report under 31 U.S.C. §

PPP loan months before 501(c)(6) organizations became eligible was publicly disclosed by through federal reports years before Tarbell filed this action.

Likewise, the Crisfield Chamber's status as a 501(c)(6) tax exempt organization (along with each defendants' status as a type of tax-exempt organization) can be confirmed by reviewing their publicly available IRS Form 990 filings for 2018 (the most recent year before the loan application). *See* Exhibit K. The IRS makes Form 990 returns available to the public under 26 U.S.C. § 6104, and they are accessible through IRS.gov and third-party databases such as ProPublica's Nonprofit explorer. *See* Exhibits O, P. Other federal district courts have considered IRS Form 990s made available by the IRS on the internet to be "federal reports". *See United States ex rel. Lesko v. Minnesota Orchestral Ass'n*, Civ. No. 23-3216, 2025 WL 1953120, at *3 (D. Minn. July 16, 2025).

Finally, the date on which 501(c)(6) organizations became eligible for PPP loans is derived from the Act of Congress that expanded PPP loan eligibility to additional categories of tax-exempt organizations. Congress made organizations exempt from taxation under IRC 501(c)(6) eligible provided they did not exceed certain thresholds for the number of employees (fewer than 300) or spending on political lobbying (less than 15% of activities or $1,000,000 per year). *See* Economic Aid to Hard-Hit Small Businesses, Nonprofits, and

---

3730(e)(4)(A)(ii)."), *United States ex rel. Relator LLC v. Kasam*, No. 2:22-cv-05198-HDV-JCx, 2025 WL 3724905, at *3 (C.D. Cal. Dec. 11, 2025), *United States ex rel. Relator LLC v. Hodges*, No. 2:22-cv-05200-FWS-GJS, 2025 WL 3724906, at *3 (C.D. Cal. Nov. 7, 2025),*United States ex rel. Relator LLC v. Sunshine*, No. 8:23-cv-00134-JVS-ADS, 2025 WL 2428470, at *4 (C.D. Cal. June 30, 2025) ("PandemicOversight.gov constitutes a 'Federal report' within the meaning of the FCA"), *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-cv-00924-TLN-CDB, 2024 WL 3666470 at *3-*4 (E.D. Cal. Aug. 6, 2024) (concluding PandemicOversight.gov constitutes a "federal report" within the meaning of the public disclosure bar), *United States ex rel. Relator, LLC v. Kellog*, No. 23-cv-118-CAB-BLM, 2025 WL 897439, at *3 (S.D. Cal. Mar. 24, 2025) ("the fact that Defendants obtained a PPP loan was disclosed on a federal website, PandemicOversight.gov, which qualifies as a 'report' for purposes of the public disclosure bar."), *United States ex rel. Relator LLC v. Erskine*, No. 22cv1158-LL-AHG, 2025 WL 796621, at *4 (S.D. Cal. Feb. 25, 2025), *rev'd and remanded on other grounds*, 182 F.4th 785 (9th Cir. 2026) ("The Court finds the PandemicOversight.gov website is a 'federal report' for purposes of the public disclosure bar").

Venues Act, Consolidated Appropriations Act, 2021, Pub. L. 116-260, § 318, 134 Stat. 1182 (Dec. 27, 2020) (amending 15 U.S.C. § 636(a)(36)(D)(vii)(I) to make PPP loans available to 501(c)(6) business leagues).

In addition to these federal sources, all of which would meet the definition of a "federal report" under *Schindler Elevator*, the information about the defendants' PPP loans and 501(c)(6) status was republished by ProPublica.org, a member of the news media. ProPublica republished the SBA PPP data set and organized it through its "Tracking PPP" webpage, which contains information about all of the PPP loans extended to the Defendants herein. See Exhibits L, M, N. Likewise, searches for each the Crisfield Chamber on ProPublica's "Nonprofit Explorer" webpage returns the organization's 501(c)(6) nonprofit status, *see* Exhibit O, and republishes its Form 990 tax returns from the IRS, *see* Exhibit P, which prominently state, on page one of each return, that the Crisfield Chamber is a 501(c)(6) organization. The Fourth Circuit has recognized that "[c]ourts have unanimously construed the term 'public disclosure' to include websites and online articles." *Beauchamp*, 816 F.3d at 43 n.6.[3]

---

[3] Other federal district courts have held that ProPublica is "news media" for purposes of the FCA's public disclosure bar. *See Cardinalli*, 833 F. Supp. 3d at 1079 ("[T]his source qualifies as 'news media' under 31 U.S.C. § 3730(e)(4)(A)…. ProPublica's publishing of PPP loan information fits easily within this definition."), *Nations Direct Mortgage,* 2026 WL 453464, at *3 ("Because ProPublica.org falls within the ordinary meaning of 'news source'… the Court finds that it is a news source under 31 U.S.C. § 3730(e)(4)(A)(iii)."), *Kasam*, 2025 WL 3724905, at *3 ("[T]he non-profit investigative outlet, ProPublica, compiled a publicly accessible database of PPP recipients…. The Court further finds that this source qualifies as 'news media' under 31 U.S.C. § 3730(e)(4)(A)."), *United States ex rel. Relator LLC v. Shupe*, No. 2:23-cv-00504-WLH, JPR, 2025 WL 4000282, at *4 (C.D. Cal. Nov. 13, 2025) ("Defendants argue that the information published by Ventura County Star, Thousand Oaks, Golfweek and ProPublica qualify as 'news media'…. The Court agrees … these documents are 'news media' for purposes of the public disclosure bar."), *United States ex rel. Relator LLC v. Uhler*, No. 2:23-cv-00499-CAS-MBKx, 2025 WL 4350115, at *5 (C.D. Cal. Oct. 6, 2025) (treating ProPublica republication of SBA report as qualifying public disclosure), *Sunshine*, 2025 WL 2428470, at *4 ("The Court finds that this source [ProPublica] qualifies as 'news media'…. ProPublica is a well-established news source that has curated a publicly available database tracking all approved PPP loans and providing information about the businesses receiving such loans."), *Lesko*, 2025 WL 1953120 at *3.

Thus, all of the information that forms the foundation of Tarbell's allegations against the 501(c)(6) defendants herein was publicly disclosed both through channels that meet the definition of "federal report" and through "news media" under 31 U.S.C. § 3730(e)(4)(A)(i), (iii).

### B. The Publicly Disclosed Information Is the Basis of Tarbell's Case.

The factual allegations in Tarbell's complaint all appear in the spreadsheet attached to the FAC. Each item in that spreadsheet appears in the SBA dataset and was republished on PandemicOversight.gov and on ProPublica.org: the loan approval date and loan amount, the date and amount of the loan forgiveness, and the type of nonprofit organization of each defendant. The date on which 501(c)(6) nonprofit organizations became eligible for such loans was published by Acts of Congress. *See* 134 Stat. 1182.

Other federal circuits have developed tests to determine whether a relator's allegations are "substantially similar", but no analysis is necessary here because Tarbell's allegations are identical to the materials that are available in the federal reports of the PRAC, the SBA, and the IRS and further reported by ProPublica. Tarbell's claim is based on the Crisfield Chamber's purported ineligibility to obtain PPP loans at the time it received such loans due to its status as a tax-exempt 501(c)(6) organization. The Crisfield Chamber's tax-exempt status, along with the relevant dates and amounts of its PPP loans are the only facts that Tarbell relies on to state its claim. Because all of this information is in the public record, Tarbell's claim is barred by the public disclosure bar.

A widely-employed formulation of the test to be applied comes from the United States Court of Appeals for the District of Columbia Circuit:

> [I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed. The language employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit *qui tam* actions *only* when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain.

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). Tarbell's complaint is a classic case of X+Y=Z under this formulation.

Here "X" is the misrepresented state of facts. According to Tarbell, each Defendant certified that it was eligible for a PPP loan at the time of its application. Yet, the SBA data set, republished at PandemicOversight.gov and at ProPublica.org, discloses the loan approval dates for each Defendant. "Y" is the true state of facts. According to Tarbell, 501(c)(6) organizations like the Crisfield Chamber, were not eligible for PPP loans until December 27, 2020. This eligibility date was set forth in the public legislation and the Crisfield Chamber's 501(c)(6) status is confirmed by federal reports such as the Form 990 filings published by the IRS, the NAICS codes in the SBA database, and reported at ProPublica's Nonprofit Explorer.

The inference of fraud, "Z" comes from the comparison of the loan approval dates ("X") to the eligibility dates and tax-exempt status ("Y"). Thus, any member of the public (or any government agency, for that matter) could infer that certain organizations received PPP loans before they were eligible, which is the exact "fraud" that Tarbell alleges.

Tarbell's FAC includes nothing from any nonpublic source about the Crisfield Chamber: no insider testimony, no ex-employee or ex-officer statement, no whistleblower emails, no internal memoranda, and no documents obtained through any private, nonpublic

communications with the Crisfield Chamber. The FAC lacks any information about the "who, what, when, where, or how" of the Crisfield Chamber's loan application. It offers no insight into who filled out the Crisfield Chamber's loan application, what professionals, if any, advised it, or what inducements or representations the private banks made, if any. Nor could it; Tarbell did not even exist until its organization in the Commonwealth of Virginia on May 17, 2024, *see* Exhibits Q, R, years after these loans were applied for, approved, and forgiven. Not only is Tarbell's FAC "substantially similar" to the information publicized from federal reports and news media, it is a simple repackaging of this public information with nothing added.

**C. Tarbell's Allegations About Public SBA Forms Add Nothing to the FAC.**

Following a slew of motions to dismiss filed in cases in other federal districts, Tarbell located the SBA forms used to apply for and obtain forgiveness of PPP loans, which are also publicly available, and amended its complaint herein to quote from these form loan applications, alleging that each Defendant must have initialed and signed such form applications as part of the PPP application and forgiveness process. Tarbell may argue that, its FAC is not premised upon the publicly available information (that each Defendant was not yet eligible for a PPP loan at the time it was approved for a first-draw PPP loan), but upon the nonpublic loan applications. However, Tarbell does not have the loan applications. It simply is quoting from SBA forms published on the internet to allege that someone ("Unknown John or Jane Does") must have initialed and signed these forms as part of the process. This is a red herring and a desperate attempt to create the illusion that Tarbell brings some nonpublic information to its claim, when it does not.

In its First Cause of Action, Tarbell alleges "each defendant … certified that 'The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program.'" FAC, ECF 8 ¶ 94. This is the preprinted language on page 2 of the "Paycheck Protection Program Borrower Application Form", SBA Form 2483 (04/20), a form that was published by the SBA and which has been available online since March 2020:

**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

SBA Borrower's Agreement Revised, available online at https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Application-3-30-2020-v3.pdf (accessed on September 14, 2026). *See* Exhibit E.

In its Second Cause of Action, Tarbell alleges that "each of these defendants certified: 'The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans . . .'" FAC, ECF 8 ¶ 101. This language, too, is lifted from a publicly-available SBA form, specifically from page 3 of the Paycheck Protection Program

Second Draw Borrower Application Form (Revised March 18, 2021), SBA Form 2483-SD (03/21), a form which has been available online since March 2021:

**Paycheck Protection Program**
**Second Draw Borrower Application Form**
**Revised March 18, 2021**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).

SBA Paycheck Protection Program: Second Draw Borrower Application Form Revised March 18, 2021, available online at: https://home.treasury.gov/system/files/136/PPP-Second-Draw-Borrower-Application-Form.pdf (accessed on September 22, 2026). *See* Exhibit F.

In its Fourth Cause of Action, Tarbell alleges "[e]ach of the other defendants included in this Count certified on the forgiveness application form for its first-draw PPP Loan: 'The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects.'" FAC, ECF 8 ¶ 114. This is language that appears on the SBA's Paycheck Protection Program Loan Forgiveness Application Revised June 16, 2020, SBA Form 3508 (06/20), available online since June 2020:

_____ The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

SBA PPP Loan Forgiveness Application, available online at https://home.treasury.gov/system/files/136/3245-0407-SBA-Form-3508-PPP-Forgiveness-Application.pdf (accessed September 22, 2026). *See* Exhibit G.

In its Fifth Cause of Action, Tarbell alleges "[e]ach of the other defendants listed in the Second Cause of Action certified on the forgiveness application form for its second-draw PPP Loan: 'The Borrower has complied with all requirements in the Paycheck Protection Program Rules (Sections 7(a)(36), (7)(a)(37), and 7A of the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of this application).'" FAC, ECF 8 ¶ 122. This is language that appears on the SBA's Paycheck Protection Program PPP Loan Forgiveness Application Form 3508S Revised July 30, 2021, SBA Form 3508S (07/21), available online since July 2021:

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**
The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.

_____ The Borrower has complied with all requirements in the Paycheck Protection Program Rules (Sections 7(a)(36), (7)(a)(37), and 7A of the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of this application), including the rules related to:

- eligible uses of PPP loan proceeds;
- the amount of PPP loan proceeds that must be used for payroll costs (including proprietor expenses for Borrowers that applied for loans using SBA Forms 2483-C or 2483-SD-C);
- the calculation and documentation of the Borrower's revenue reduction (if applicable); and
- the calculation of the Borrower's Requested Loan Forgiveness Amount.

Information regarding these requirements may be found in the Form 3508S Instructions and the Paycheck Protection Program Rules.

SBA, PPP Loan Forgiveness Application Form 3508S Revised July 30, 2021, available online at https://home.treasury.gov/system/files/136/PPP--Forgiveness-Application-and-Instructions--3508S-7-30-2021-508.pdf (accessed on September 22, 2026). *See* Exhibit H.

Tarbell continues to mine publicly available information to create the illusion that it is somehow an insider. Here, by identifying language from forms the SBA has published online since 2020-21, Tarbell seeks to create the impression that it has the loan applications for

each defendant. The loan applications contained preprinted certifications, but Tarbell does not allege who signed the applications, when they were signed, where they were signed, or, most importantly, what facts suggest that the person who signed such applications had actual knowledge of the applications' falsity or acted with such deliberate ignorance or reckless disregard as to the truth of the certifications. Similarly, the loan forgiveness applications contained certifications to be initialled, but Tarbell does not allege whose initials appear next to such certifications, or even if such certifications were initialled, where the forgiveness applications were prepared, when, or any facts suggesting that the persons completing the applications had knowledge of the certifications' falsity.

Even if Tarbell had the loan applications for each defendant, the application would merely be evidence confirming what was already known from the public disclosure, *viz.,* that a 501(c)(6) tax-exempt organization obtained a PPP loan when that type of organization was not yet eligible. The essential facts of the allegedly fraudulent scheme were already in the public domain. Any purported certification on a loan application form "merely adds details to a previously exposed fraud" and thus "does not help reduce fraud or return funds to the federal fisc, because once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 303 (4th Cir. 2017) (quoting *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009)).

**D. Tarbell Is Not an Original Source.**

The public disclosure bar can be avoided if the relator is an "original source" of the information. *See* 31 U.S.C. § 3730(e)(4)(A). An "original source" is defined as a person who

either (i) "prior to public disclosure under subsection (e)(4)(A) has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based," or (ii) "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B).

Tarbell cannot meet either of these definitions. Tarbell does not allege that it disclosed any of the allegations in its FAC to the Government before these allegations became publicly known or before Tarbell filed this action. That alone is enough to hold that Tarbell is not an original source.

Furthermore, all of the information alleged in the FAC concerning the Crisfield Chamber was derived from the loan documents that were filed with the SBA. PandemicOversight.gov (along with the SBA public data set) draws its information from the SBA records. Tarbell has not alleged any facts in the FAC pertaining to the Crisfield Chamber that add to or are independent from the publicly disclosed information. Tarbell does not claim that it possesses "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B). Tarbell cannot satisfy the original source exception.

Applying the public disclosure bar to dismiss Tarbell's FAC would align this Court with five other district courts in California, Illinois, and Minnesota that have dismissed *qui tam* suits brought by serial PPP database miners like Tarbell at the 12(b)(6) stage based upon the public disclosure bar. *See, e.g., United States ex rel. Relator LLC v. Cardinalli*, 833 F. Supp. 3d 1072, 1081 (C.D. Cal. 2026), *United States ex rel. Relator LLC v. Shupe*, No. 2:23-cv-00504-

WLH-JPR, 2025 WL 4000282, at *4-*6 (C.D. Cal. Nov. 13, 2025), *United States ex rel. Akeel & Valentine, PLC v. Napleton Auto Group, Inc.*, No. 24 CV 00047, 2025 WL 2930796, at *9, *12 (N.D. Ill. Oct. 15, 2025), *United States ex rel. Lesko v. Minnesota Orchestral Ass'n*, Civ No. 23-2316 (PAM/SGE), 2025 WL 1953120, at *3-*4 (D. Minn. July 16, 2025), *United States ex rel. Relator LLC v. Sunshine*, No. 8:23-cv-00134-JVS-ADS, 2025 WL 2428470, at *4 (C.D. Cal. June 30, 2025), *United States ex rel. Relator LLC v. Kellog*, No. 23-cv-118-CAB-BLM, 2025 WL 897439, at *3 (S.D. Cal. Mar. 24, 2025), *United States ex rel. Relator LLC v. Kootstra*, No. 1:22-cv-00924-TLN-CDB, 2024 WL 3666470, at *3-*4 (E.D. Cal. Aug. 6, 2024).

## III. Dismissal Should Be with Prejudice, as any Amendment Would Be Futile.

Prior to ever serving any Defendant herein, Tarbell amended its complaint attempting to guard it against the first round of motions to dismiss filed in sister district courts challenging virtually identical complaints against other nonprofits across the country. Despite such amendments, Tarbell's FAC contains defects that cannot be cured. Once the public disclosure bar applies, there is no manner in which Tarbell can amend its claims against any defendant, including the Crisfield Chamber, to survive the bar. Because Tarbell is not an original source and cannot plead nonpublic facts about Defendant Crisfield Chamber, any amendment to Tarbell's already-amended complaint would be futile. When future amendments would be futile, dismissal should be with prejudice. *See Aljizzani v. Middle East Broadcasting Networks, Inc.*, 178 F.4th 863, 871 (4th Cir. 2026), *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021), *Wilson,* 525 F.3d at 379.

## CONCLUSION

For the reasons set forth above, Tarbell has failed to plausibly set forth claims under the FAC under Rule 12(b)(6) and with the particularity required by Rule 9(b). Even had Tarbell's FAC been well-pled, the claims set forth therein against Crisfield Chamber (and all defendants) are barred by the public disclosure bar. Defendant Crisfield Chamber requests that this Court grant its Motion to Dismiss the First Amended Complaint with prejudice.

/s/ John K. Phoebus
John K. Phoebus, Bar No. 25169
ANTHENELLI, PHOEBUS & HICKMAN, LLC
110-B Baptist Street
P.O. Box 4366
Salisbury, Maryland 21803-4366
tel. (410) 749-3700
fax (410) 749-7550
john@phoebuslaw.com

Attorneys for Defendant Crisfield
Area Chamber of Commerce, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2026, a copy of Defendant Crisfield Area Chamber of Commerce, Inc.'s Memorandum of Law in Support of Motion to Dismiss was served electronically via the CM/ECF system to:

Bruce Ellis Fein, Esquire
Bruce Ellis Fein PLLC
P.O. Box 506
Great Falls, Virginia 22066
Attorney for Relator

/s/ John K. Phoebus
John K. Phoebus, Bar Number 25169