**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| United States of America ex rel.<br>The Tarbell Group, LLC,<br><br>Plaintiff/Relator,<br><br>v.<br><br>Maryland Watermen's Association Inc.,<br>et al.,<br><br>Defendants. | Case No. 1:25-cv-00915-MJM |

**MEMORANDUM IN SUPPORT OF DEFENDANT MARYLAND WATERMEN'S ASSOCIATION INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ....................1
II. RELATOR'S ALLEGATIONS ....................2
A. The PPP Loan Program ....................2
B. The Maryland Watermen's Association ....................3
C. The Claims Against the Association ....................3
III. STANDARD OF REVIEW ....................5
A. Rules 8(a) and 12(b)(6): Stating a Plausible Claim for Relief ....................5
B. Rule 9(b): Heightened Pleading for Fraud ....................6
IV. ARGUMENT ....................7
A. The Public Disclosure Bar Requires Dismissal of All Claims Against the Association. ....................7
1. Substantially the Same Allegations and Transactions Were Publicly Disclosed Before This Suit. ....................8
i. The Loan Was Disclosed by the SBA and by ProPublica. ....................8
ii. The 501(c)(5) Classification Was Disclosed by the IRS and by ProPublica. ....................10
iii. The Eligibility Rules Are Public Law. ....................11
2. The Public Disclosures Predate This Action. ....................12
3. Together, the Disclosures Reveal the Entire Transaction Relator Alleges. ....................13
4. Relator Is Not an Original Source. ....................14
5. The Eastern District of Tennessee's Recent Decision Confirms that This Record Compels Dismissal. ....................15
B. The FAC Fails to Plead Falsity, Scienter, or Materiality Against the Association. ....................16
1. Falsity Is Not Pled with Particularity. ....................17
2. No Facts Support Scienter. ....................18
3. Materiality Is Not Pled with Particularity. ....................19
C. The Reverse False Claim Duplicates the Direct Claims. ....................21
D. Dismissal Should Be with Prejudice Because Amendment Would Be Futile. ....................21
V. CONCLUSION ....................22

## TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................5, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................5

*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................................22

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) ....................................................7

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)..................6

*In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743 (4th Cir. 2021) ................................22

*Relator, LLC v. Erskine*, 182 F.4th 785 (9th Cir. 2026) ....................................................11

*Relator LLC v. Lim*, No. 22-cv-04715-AGT, 2025 WL 4052367 (N.D. Cal. Apr. 22, 2025) .......................................................................................................................16

*Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011) ................7, 9

*Seikel v. Alvarez*, No. 1:23-cv-01, 2024 WL 1315869 (N.D.W. Va. Mar. 27, 2024)...9, 15, 17

*United States ex rel. Ahumada v. NISH*, 756 F.3d 268 (4th Cir. 2014) ............................17

*United States ex rel. Akeel & Valentine, PLC v. Napleton Auto Grp., Inc.*, No. 24 CV 00047, 2025 WL 2930796 (N.D. Ill. Oct. 15, 2025)..................................................16

*United States ex rel. Animal Legal Defense Fund v. Holden Farms, Inc.*, No. 21-2061 (JRT/DJF), 2024 WL 2728451 (D. Minn. May 24, 2024)..........................................20

*United States ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006)..........................6

*United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 816 F.3d 37 (4th Cir. 2016) ...........................................................................................................1, 7, 9, 12

*United States ex rel. Brickman v. Business Loan Express, LLC*, No. 1:05-CV-3147-JEC, 2007 WL 4553474 (N.D. Ga. Dec. 18, 2007), aff'd, 310 F. App'x 322 (11th Cir. 2009) .........................................................................................................................9

*United States ex rel. Burke v. St. Jude Med., Inc.*, No. 16-3611-SAG, 2021 U.S. Dist. LEXIS 247381 (D. Md. Dec. 29, 2021)..........................................................9, 13, 14

*United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293 (4th Cir. 2017) .............15

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002) .........6

*United States ex rel. Complin v. N.C. Baptist Hosp.*, 818 F. App'x 179 (4th Cir. 2020) ..18

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, No. 13-2983, 2014 WL 4375638 (E.D. Pa. Sept. 4, 2014) ............................................................9

*United States ex rel. Doe v. John Doe*, 960 F.2d 318 (2d Cir. 1992) .................................2

*United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015)..................18, 19

*United States ex rel. Elgasim Mohamed Fadlalla v. DynCorp Int'l, LLC*, 402 F. Supp. 3d 162 (D. Md. 2019) .........................................................................................2, 21

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d Cir. 2021)............................21

*United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190 (4th Cir. 2018) ..............6

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009)........................6

*United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625 (D. Md. 2019) ....................7

*United States ex rel. Maharaj v. Estate of Zimmerman*, No. DLB-18-2998, 2020 WL 4501464 (D. Md. Aug. 5, 2020)....................21

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451 (4th Cir. 2013) ....................5, 6

*United States ex rel. Nevadans Against Fraud on the Gov't, LLC v. Terrible Herbst*, No. 2:24-CV-2277 JCM (BNW), 2026 U.S. Dist. LEXIS 44113 (D. Nev. Mar. 4, 2026) ....................13, 16

*United States ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185 (4th Cir. 2022) ....................17

*United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805 (11th Cir. 2015) ....................9

*United States ex rel. Relator LLC v. Cardinalli*, No. 5:23-cv-00113-HDV-DTB, 2026 WL 391430 (C.D. Cal. Feb. 9, 2026)....................16

*United States ex rel. Relator LLC v. Kellog*, No. 23-CV-118-CAB-BLM, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025)....................16

*United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) ....................16

*United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*, 739 F. Supp. 2d 396 (S.D.N.Y. 2010) ....................9

*United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694 (4th Cir. 2014)....................18

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023)....................18

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) ....................13

*United States ex rel. Taylor v. Boyko*, 39 F.4th 177 (4th Cir. 2022) ....................17

*United States ex rel. The Tarbell Group LLC v. Bristol TN-VA Ass'n of Realtors*, No. 1:25-cv-111, ECF No. 149 (E.D. Tenn. Sept. 14, 2026) ....................1, 15, 16

*United States ex rel. Wheeler v. Acadia Healthcare Co.*, 127 F.4th 472 (4th Cir. 2025)..17

*United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist.*, 777 F.3d 691 (4th Cir. 2015)....................7

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008) ....................6, 17, 22

*United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724 (D.S.C. 2017)....................21

*United States v. Minnesota Orchestral Ass'n*, No. CV 23-3216 (PAM/SGE), 2025 WL 1953120 (D. Minn. July 16, 2025)....................16

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) 18, 19, 20

*WP Co. v. U.S. SBA*, 502 F. Supp. 3d 1 (D.D.C. 2020) ....................8, 12

Statutes, Rules, and Regulations

26 U.S.C. § 501(c)(5)....................3

26 U.S.C. § 6104 ..........10
31 U.S.C. § 3729 ..........2, 4, 16, 17, 18, 19, 21
31 U.S.C. § 3730(e)(4) ..........1, 2, 7, 9, 13, 14
Fed. R. Civ. P. 5.2 ..........11
Fed. R. Civ. P. 8 ..........2, 5, 6
Fed. R. Civ. P. 9(b) ..........2, 6, 17, 18, 19, 20, 22
Fed. R. Civ. P. 12(b)(6) ..........5, 7, 15, 16
Fed. R. Evid. 201 ..........7
85 Fed. Reg. 20811 (Apr. 15, 2020) ..........3, 12, 20
American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 5001, 135 Stat. 4 ..........2, 3, 11
Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ..........2
Paycheck Protection Program Flexibility Act of 2020, Pub. L. No. 116-142, 134 Stat. 641 ..........2
Taxpayer First Act, Pub. L. No. 116-25, § 3101 (2019) ..........10

# I. INTRODUCTION

Relator The Tarbell Group, LLC is a serial qui tam filer, not a whistleblower. Operating through a corporate shell, it has seeded dockets across the country with materially identical False Claims Act ("FCA") complaints, each accusing dozens of organizations, strangers to Relator, all of them, of fraud in connection with COVID-19 relief and the Paycheck Protection Program ("PPP") administered by the U.S. Small Business Administration ("SBA").[1] The business model is settlement extraction, not fraud detection.

Relator has no window into Defendant Maryland Watermen's Association Inc. (the "Association"). It never worked there, never transacted with it, and alleges no relationship with the Association or with any other Defendant. What Relator has instead is a web browser. Every fact pled against the Association in the First Amended Complaint (ECF No. 8, "FAC") sits in public federal databases and on public websites: the SBA's own published PPP borrower file supplies each entry on the loan table attached to the FAC; the Internal Revenue Service's ("IRS") published records supply the Association's tax-exempt classification; and the eligibility rules Relator invokes are statutes and regulations — public law, available to anyone.

Congress wrote the FCA's public disclosure bar for exactly this kind of case. 31 U.S.C. § 3730(e)(4). A relator may not assemble a fraud theory from information the government itself has already placed before the public and then demand a bounty for "discovering" it. *United States ex*

---

[1] PACER discloses at least eight federal districts in which The Tarbell Group, LLC has filed materially identical PPP qui tam actions, each against defendants with whom it alleges no connection. *See, e.g.*, *United States ex rel. The Tarbell Group, LLC v. Acoaxet Club Inc.*, No. 1:24-cv-11950-LTS (D. Mass. filed July 26, 2024) (alleging PPP loan fraud against 104 defendants); *United States ex rel. The Tarbell Group, LLC v. Mid-Eastern Athletic Conference*, No. 1:24-cv-00849-LMB-LRV (E.D. Va. filed May 21, 2024) (7 defendants); *United States ex rel. The Tarbell Group, LLC v. Simbeck, Inc.*, No. 5:24-cv-00046-EDK-JCH (W.D. Va. filed June 28, 2024); *United States ex rel. The Tarbell Group, LLC v. Appaloosa Horse Club*, No. 3:25-cv-00145 (D. Idaho filed Mar. 14, 2025) (15 defendants); *United States ex rel. The Tarbell Group LLC v. Bristol TN-VA Ass'n of Realtors*, No. 1:25-cv-111 (E.D. Tenn. filed Apr. 2, 2025).

*rel. Beauchamp v. Academi Training Ctr., Inc.*, 816 F.3d 37, 43 (4th Cir. 2016); *United States ex rel. Doe v. John Doe*, 960 F.2d 318, 321 (2d Cir. 1992) (the FCA does not reward those who seek "quick cash" by "capitaliz[ing]" on public information). Where, as here, "substantially the same allegations or transactions" were "publicly disclosed" before suit, dismissal is mandatory. 31 U.S.C. § 3730(e)(4)(A).

The claims against the Association, those being the First and Fourth Causes of Action, both arising from a single first-draw PPP loan of $16,417.00, fail for independent reasons as well. The FAC pleads none of the particulars that Rules 8(a) and 9(b) demand: it does not plausibly or particularly allege falsity, scienter, or materiality as to the Association. And the Fourth Cause of Action's reverse-false-claim theory under 31 U.S.C. § 3729(a)(1)(G) merely restates the direct claims and fails with them. *See United States ex rel. Elgasim Mohamed Fadlalla v. DynCorp Int'l, LLC*, 402 F. Supp. 3d 162, 191 (D. Md. 2019). All claims against the Association should be dismissed with prejudice.

## II. RELATOR'S ALLEGATIONS.

### A. The PPP Loan Program.

Congress created the PPP in March 2020, through the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020), to move emergency loans to businesses reeling from the COVID-19 pandemic. FAC ¶ 74. The program's terms did not stand still: Congress amended the PPP repeatedly, including through the Paycheck Protection Program Flexibility Act of 2020, Pub. L. No. 116-142, and the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2. *Id.* PPP loans were private loans that the SBA guaranteed, forgave, and reimbursed. *Id.* A borrower could obtain up to two loans, a first draw and, later, a second draw available only to those who had already received a first. *Id.* ¶¶ 75–76.

A borrower obtained a PPP loan by completing, signing, and submitting to a participating lender an application form prescribed by the SBA, certifying, among other things, its eligibility under the rules in effect when it applied. FAC ¶ 78. Forgiveness required a second SBA-prescribed form carrying its own certifications of compliance and accuracy. *Id.* ¶ 79.

According to Relator, the PPP excluded tax-exempt 501(c)(5) organizations until March 11, 2021. FAC ¶ 81. That is the day ARPA, which opened the program to additional categories of nonprofit organizations, became law. *See* Pub. L. No. 117-2, § 5001, 135 Stat. 4 (Mar. 11, 2021). At every point in the program's life, its eligibility rules were public law, set out in statutes and in the SBA's published rules. *See, e.g.*, 85 Fed. Reg. 20811 (Apr. 15, 2020).

**B. The Maryland Watermen's Association.**

The Association is exempt from taxation under section 501(c)(5) of the Internal Revenue Code, 26 U.S.C. § 501(c)(5). FAC ¶ 6. Relator alleges that, on the loan application at issue, the Association gave its address as 1805A Virginia Street, Annapolis, Maryland. *Id.* Founded in 1973 and headquartered in Annapolis, the Association is a nonprofit trade association representing the interests of Maryland's commercial fishermen, seafood processors, wholesalers, and related businesses in the seafood industry. Beyond the entries on the loan table attached to the FAC, the pleading contains no allegation particular to the Association.

**C. The Claims Against the Association.**

The FAC pleads every count against Defendants in groups. Two of its six counts reach the Association: the First Cause of Action (first-draw PPP loan applications) and the Fourth Cause of Action (first-draw forgiveness applications). FAC ¶¶ 92–98, 111–118. The Association is not alleged to be a "Private Club" and is not named in the Third or Sixth Causes of Action, and because

it is not alleged to have taken a second-draw loan, the Second and Fifth Causes of Action do not reach it either. *See id.* ¶¶ 99–110, 119–134.

In the First Cause of Action, Relator alleges that each institutional defendant applied for and received a first-draw PPP loan, FAC ¶ 93, certifying on the application form that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program . . . ." *Id.* ¶ 94. Relator pleads that each such certification was "required as a material prerequisite to receive a PPP Loan," *id.* ¶ 96, and was "false and known by the certifying defendant and the individual defendants acting on its behalf to be false" because each defendant held a 501(c) classification excluded from the PPP until after the SBA approved its loan. *Id.* ¶ 97. On that footing, Relator claims violations of 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B). *Id.* ¶ 98.

The Fourth Cause of Action runs the same theory through the forgiveness process. Relator alleges that the same defendants applied for and obtained forgiveness of their first-draw loans, FAC ¶ 112, and that the Association certified on its forgiveness application that "[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects." *Id.* ¶ 114. The form advised that the "SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan." *Id.* ¶ 115. Relator pleads that the certifications were material prerequisites to forgiveness, *id.* ¶ 116, and false because each defendant "had been ineligible to receive its first-draw PPP Loan," *id.* ¶ 117, in violation of 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G). *Id.* ¶ 118.

The loan table attached to the FAC holds the only loan-specific facts pled as to the Association: a single first-draw PPP loan, number 9508187810, approved June 8, 2020, in the amount of $16,417.00, and forgiven January 28, 2021, in the amount of $16,520.00, with a listed "Date Eligible" of March 11, 2021. ECF No. 8 at 40. As shown below, every one of those data points comes straight from the SBA's own published borrower database, and the Association's 501(c)(5) classification comes straight from the IRS's published records.

## III. STANDARD OF REVIEW.

### A. Rules 8(a) and 12(b)(6): Stating a Plausible Claim for Relief.

A complaint survives Rules 8(a) and 12(b)(6) only if its well-pleaded facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility asks whether the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged"; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The analysis begins with subtraction. Conclusory statements, formulaic recitations, labels, naked assertions of illegality, and "legal conclusion[s] couched as . . . factual allegation[s]" are stripped out and disregarded. *Iqbal*, 556 U.S. at 678–80; *Twombly*, 550 U.S. at 555. Whatever facts remain must do more than permit an inference of wrongdoing: where lawful explanations for the alleged conduct are as likely or more likely, the inference of illegality is not a reasonable one, *Twombly*, 550 U.S. at 567, because "[f]acts that are 'merely consistent with' liability do not establish a plausible claim to relief," *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

**B. Rule 9(b): Heightened Pleading for Fraud.**

Because FCA claims sound in fraud, Rule 9(b) layers a particularity requirement on top of Rule 8(a)'s plausibility standard. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999); Fed. R. Civ. P. 9(b). A relator must plead the "who, what, when, where, and how" of the fraud, *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008), and in this Circuit must allege either particularized false claims or a pattern of conduct that necessarily led to their submission, *Takeda Pharm.*, 707 F.3d at 457. The rule does not permit a relator "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the government." *Id.* at 456–57 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

Rule 9(b) is a gatekeeper. It screens out fraud claims that "would have to rest primarily on facts learned through the costly process of discovery," *Wilson*, 525 F.3d at 380; *see also Harrison*, 176 F.3d at 784, and it shields defendants from the reputational damage that unfounded fraud accusations inflict, *Takeda Pharm.*, 707 F.3d at 456. Those protections apply with "special force" in FCA litigation, *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018), where the statute's bounty gives relators every financial incentive to sue first and investigate later, *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009) (Rule 9(b) "prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition'").

## IV. ARGUMENT.

### A. The Public Disclosure Bar Requires Dismissal of All Claims Against the Association.

The FCA rewards genuine whistleblowing; it does not reward recycling. To police that line, Congress directed that a "court shall dismiss an action or claim . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media," unless the "person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A); *see United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist.*, 777 F.3d 691, 695 (4th Cir. 2015) (the bar exists to prevent parasitic suits built on fraud already disclosed to the public). The Supreme Court gives the bar a "generally broad scope," reading both its enumerated sources and the phrase "allegations or transactions" expansively. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011).

That the public disclosure bar now operates as an affirmative defense rather than a jurisdictional limit, *see Beauchamp*, 816 F.3d at 40, does not postpone its resolution: "[W]here facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Courts in this District have resolved the bar in precisely that posture, taking judicial notice of public records under Federal Rule of Evidence 201 at the pleading stage. *United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625, 639–41 (D. Md.

2019). Every fact on which this Motion relies appears on the face of the FAC or in the public records attached to the Association's Request for Judicial Notice.

#### 1. Substantially the Same Allegations and Transactions Were Publicly Disclosed Before This Suit.

Stripped of labels, the claims against the Association rest on three facts: (1) the Association applied for, received, and obtained forgiveness of a first-draw PPP loan; (2) the Association is a section 501(c)(5) organization; and (3) the PPP excluded 501(c)(5) organizations until March 11, 2021. Each fact was on the public record before Relator sued. The first two appear in federal reports and the news media; the third is an act of Congress.

##### i. The Loan Was Disclosed by the SBA and by ProPublica.

Begin with the loan itself. The SBA publishes a searchable database of PPP loan-level information at https://data.sba.gov/dataset/ppp-foia. (Request for Judicial Notice ("RJN"), Ex. A.) The page's posted metadata shows an issue date of March 3, 2021, and a last-modified date of October 21, 2024, and the underlying loan-level records have been open to the public since 2020, when news organizations won their Freedom of Information Act suit against the SBA.[2] The database thus predates, by years, Relator's March 19, 2025, complaint.

Within that database, the Association's loan sits in the file titled "public_up_to_150k_6_240930.csv," at row 580852. (RJN, Ex. B.) The row lays out the entire transaction: the borrower's name and address (1805A Virginia St, Annapolis, MD); the loan number (9508187810); the June 8, 2020, approval; the $16,417.00 amount; the lender (Cedar Point FCU of Lexington Park, Maryland); the "Non-Profit Organization" business type; the jobs

[2] The loan-level data has been open to the public since 2020, when news organizations prevailed in Freedom of Information Act litigation against the SBA. *WP Co. v. U.S. SBA*, 502 F. Supp. 3d 1, 28 (D.D.C. 2020).

reported; the NAICS code; and the January 28, 2021, forgiveness of $16,520.00. *Id.* Nothing on the FAC's loan table adds to it. (The SBA record renders the borrower's name as "MARYLAND WATERMANS ASSOCIATION, INC."; its loan number and its 1805A Virginia Street, Annapolis, Maryland address match the FAC's allegations against the Association. *See* FAC ¶ 6; ECF No. 8 at 40.) A publicly accessible federal database of this kind is a "Federal report" within 31 U.S.C. § 3730(e)(4)(A)(ii),[3] and, as a public website organizing and disseminating information, qualifies as "news media" besides.[4]

ProPublica publishes the same loan. Its "Tracking PPP" database, available to the public at https://projects.propublica.org/coronavirus/bailouts/, went live on July 7, 2020, and was last updated on October 27, 2024. (RJN, Ex. D.) The Association's loan page, https://projects.propublica.org/coronavirus/bailouts/loans/maryland-watermans-association-inc-9508187810, displays the $16,417 loan, approved June 8, 2020, in the program's first round through lender Cedar Point FCU; the "Non-Profit Organization" business type; and the "Forgiven" loan status, with $16,520 forgiven — and it states that the underlying data includes lender-approved PPP loans as of June 1, 2021. (RJN, Ex. E.) ProPublica is a newsroom, and its publicly available databases are "news media" under 31 U.S.C. § 3730(e)(4)(A)(iii). *See Seikel v. Alvarez*,

---

[3] *Schindler Elevator Corp.*, 563 U.S. at 407–08 (adopting "broad" definition of "report" under the FCA to mean "something that gives information"); *United States ex rel. Burke v. St. Jude Med., Inc.*, No. 16-3611-SAG, 2021 WL 6135202, at *14–15 (D. Md. Dec. 29, 2021) (publicly searchable FDA database is an administrative report under the public disclosure bar); *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, No. 13-2983, 2014 WL 4375638, at *30–32 (E.D. Pa. Sept. 4, 2014) (searchable database of federal import data qualifies as "administrative report," "news media," or "federal reports"); *United States ex rel. Brickman v. Business Loan Express, LLC*, No. 1:05-CV-3147-JEC, 2007 WL 4553474, at *14 (N.D. Ga. Dec. 18, 2007), aff'd, 310 F. App'x 322 (11th Cir. 2009) (treating publicly available SBA loan spreadsheets as a public disclosure); *United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*, 739 F. Supp. 2d 396, 405–07 (S.D.N.Y. 2010) (a "database available on a government website" can qualify as a federal report when "readily available," "free," and "easily navigable").

[4] *Beauchamp*, 816 F.3d at 43 n.6 ("Courts have unanimously construed the term 'public disclosure' to include websites and online articles," and have construed "news media" to include newspapers and publicly available websites); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 813 (11th Cir. 2015) ("publicly available websites, which are intended to disseminate information . . . qualify as news media"); *Seikel v. Alvarez*, No. 1:23-cv-01, 2024 WL 1315869, at *10–11 (N.D.W. Va. Mar. 27, 2024) (ProPublica's PPP loan database qualifies as "news media"); *Victaulic Co.*, 2014 WL 4375638, at *30–32.

No. 1:23-cv-01, 2024 WL 1315869, at *10–11 (N.D.W. Va. Mar. 27, 2024) (so holding as to ProPublica's PPP loan database); *supra* n.4.

**ii. The 501(c)(5) Classification Was Disclosed by the IRS and by ProPublica.**

Next, the classification. Relator's theory turns on the Association's tax-exempt 501(c)(5) status. FAC ¶¶ 6, 81, 97. The IRS publishes that too, and has for years, through several channels.

The first is the Exempt Organizations Business Master File Extract ("EO BMF"), the IRS's standing public database of recognized tax-exempt organizations, available at https://www.irs.gov/charities-non-profits/exempt-organizations-business-master-file-extract-eo-bmf. (RJN, Ex. F.) In the Maryland file, found at https://www.irs.gov/pub/irs-soi/eo_md.csv, at row 17407, the IRS lists the Association (EIN ending 1860) at the same 1805A Virginia Street, Annapolis, Maryland address the FAC alleges, with a "Subsection" code of "05" which is the code for a section 501(c)(5) organization, and a "Ruling" date of "197310," reflecting recognition of exempt status in October 1973. (RJN, Ex. G.) The EO BMF, like the SBA's database, is both a "Federal report," *supra* n.3, and "news media," *supra* n.4.

The second channel is the Association's own tax returns, which federal law makes public.[5] Through the IRS Tax Exempt Organization Search, https://apps.irs.gov/app/eos/ (RJN, Ex. I), a search of the organization's name returns the Association's Form 990 filings, including those for the fiscal years ended June 2018, June 2019, and June 2020, those being the years preceding and encompassing the June 8, 2020, loan. Each identifies the Association on its face, at Item I of the form's header, as exempt under section "501(c) (5)," and each reports the Association's 1973 year of formation. (RJN, Ex. J, K, and L.) The IRS received stamps on those filings, December 2018,

[5] Taxpayer First Act, Pub. L. No. 116-25, § 3101 (2019) (amending 26 U.S.C. § 6104(b) to require tax-exempt organization returns to be made available to the public in machine-readable format as soon as practicable).

November 2020, and January 2021, respectively, show that all three were on file with the IRS years before this action, and the Association's complete Form 990 history dating to fiscal year 2005 is catalogued on ProPublica's Nonprofit Explorer. (RJN, Ex. N.)

ProPublica is the third channel. Its Nonprofit Explorer, a searchable public database of tax-exempt organizations at https://projects.propublica.org/nonprofits/ (RJN, Ex. M), carries an organization page for the Association, reached by searching the Association's name; the page's URL incorporates the Association's full EIN and is therefore not reproduced here. *See* Fed. R. Civ. P. 5.2(a). That page identifies the Association (EIN ending 1860) as "[d]esignated as a 501(c)(5)" organization, "[t]ax-exempt since Oct. 1973," and catalogues its Form 990 filings back to fiscal year 2005. (RJN, Ex. N.) ProPublica, again, is "news media." *Supra* n.4.

The Ninth Circuit's recent decision in *Relator, LLC v. Erskine*, 182 F.4th 785 (9th Cir. 2026), underscores why the identity of these channels matters. There, the claim of another relator in the business of mining public loan data escaped the bar only because the fact establishing the borrower's alleged ineligibility, its status as a lender, appeared in no qualifying source; the borrower's own website, the panel held, is not "news media." Here, by contrast, the fact establishing the Association's alleged ineligibility, its 501(c)(5) classification, was published by the IRS in federal reports and catalogued by ProPublica, an established news organization, in the news media.

**iii. The Eligibility Rules Are Public Law.**

Finally, the exclusion itself. That 501(c)(5) organizations could not receive PPP loans before March 11, 2021, FAC ¶ 81, is not information anyone needed to leak; it is legislation. The eligibility rules Relator invokes appear in the United States Statutes at Large and the Federal Register. *See* Pub. L. No. 117-2, § 5001, 135 Stat. 4 (enacted March 11, 2021) (expanding PPP

eligibility to additional categories of nonprofit organizations); 85 Fed. Reg. 20811 (Apr. 15, 2020). When Congress changed the PPP's rules, it told the world.

**2. The Public Disclosures Predate This Action.**

Timing under the bar runs from the first pleading of the claim. *See United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 816 F.3d 37, 43–45 (4th Cir. 2016). Relator filed its initial suit naming the Association on March 19, 2025.[6] Every disclosure identified above came first, and the point is proven with dated records rather than assumed.

The SBA's PPP loan-level data has been public since 2020, when news organizations prevailed in FOIA litigation compelling its release. *WP Co. v. U.S. SBA*, 502 F. Supp. 3d 1, 28 (D.D.C. 2020). An Internet Archive ("Wayback Machine") capture of the SBA's PPP borrower database page, captured on January 1, 2025, more than two months before Relator filed suit, is attached to the RJN as Exhibit C and shows that the same loan-level dataset was then posted and publicly downloadable, including the very file that contains the Association's loan information, "public_up_to_150k_6_240930.csv," and reflecting the dataset's most recent update of October 21, 2024. ProPublica's PPP database states on its face that it was created on July 7, 2020, and last updated on October 27, 2024, months before Relator filed suit, and the Association's ProPublica loan page states that its underlying data includes lender-approved loans as of June 1, 2021. (RJN, Exs. D, E.) The IRS's EO BMF has been published and periodically updated for years, and an archived capture of the EO BMF page, captured on January 8, 2025, reflecting an updated data posting date of December 10, 2024, is attached as Exhibit H. The Association's Form 990 filings for the fiscal years ended June 2018 through June 2020 were likewise filed with, and received by,

[6]Relator filed its original complaint, which named the Association, on March 19, 2025 (ECF No. 1). The public-disclosure analysis is accordingly measured against that date — the earliest possible benchmark. *See Beauchamp*, 816 F.3d at 43–45.

the IRS between December 2018 and January 2021, as the IRS received stamps on their faces reflect, and were publicly available years before this suit.

These dated, judicially noticeable records establish that both the Association's PPP loan information and its 501(c)(5) classification were publicly available before Relator filed this action. Defendants in a parallel action brought by a similarly situated relator made precisely this kind of web-archive showing to establish what information was publicly available when the relator filed suit. *See United States ex rel. Nevadans Against Fraud on the Gov't, LLC v. Terrible Herbst*, No. 2:24-CV-2277 JCM (BNW), 2026 U.S. Dist. LEXIS 44113, at *14-16 (D. Nev. Mar. 4, 2026).

**3. Together, the Disclosures Reveal the Entire Transaction Relator Alleges.**

The bar reaches disclosures of "allegations or transactions." 31 U.S.C. § 3730(e)(4)(A). No prior accusation of fraud is required: under the "transaction" prong, it is enough that the public record contained the facts from which the fraud Relator now alleges could be inferred. *United States ex rel. Burke v. St. Jude Med., Inc.*, No. 16-3611-SAG, 2021 U.S. Dist. LEXIS 247381, at *7 (D. Md. Dec. 29, 2021). Courts put the test algebraically:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

*Id.* at *20 (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)).

Here, "X" is the Association's participation: it applied for, received, and obtained forgiveness of a first-draw PPP loan on SBA-prescribed forms carrying eligibility certifications, all published by the SBA's own database and by ProPublica. "Y" is the Association's status: a section 501(c)(5) organization, per the IRS's published records, the Association's own Form 990 filings, and ProPublica's Nonprofit Explorer, in a program that public statute and rule closed to

501(c)(5) organizations until March 11, 2021. Put X and Y together and "Z" — the inference Relator dresses up as a federal fraud case — falls out on its own: an assertedly ineligible organization received and had forgiven a PPP loan. As in *Burke*, the essential elements of the claimed fraud were sitting in the public record, assembled and waiting.

Relator added nothing to that record. Its pleading restates what the government and the press had already published. These are allegations any member of the public could compile from the same sources in an afternoon. That is the definition of an action the public disclosure bar forbids.

**4. Relator Is Not an Original Source.**

Once substantially the same allegations or transactions stand publicly disclosed, "[t]he court shall dismiss" unless the relator is an "original source." 31 U.S.C. § 3730(e)(4)(A). The statute reserves that label for a person who either voluntarily gave the government the underlying information before the public disclosure, or who holds knowledge "independent of" and "materially add[ing] to" the disclosures and provided it to the government before suing. *Id.* § 3730(e)(4)(B).

Relator fits neither branch. The FAC nowhere alleges that Relator gave the government anything, before the disclosures, before filing, or ever. Nor could Relator claim knowledge "independent of" and "materially add[ing] to" the public record, because every fact the FAC pleads about the Association traces to the public sources identified above. A stranger to the Association working from government databases and news websites is the opposite of an original source. The inquiry ends there, and the claims against the Association must be dismissed.

The FAC's quotations from the application and forgiveness forms do not change the analysis. The certification language Relator recites, FAC ¶¶ 94, 114–15, is the preprinted text of

the SBA's standard borrower application and loan forgiveness forms, which the government has published online since 2020. Relator nowhere alleges that it has seen any application the Association actually submitted; it quotes blank public forms and asks the Court to assume the rest. Copying boilerplate from one public source does not make Relator an original source as to another, and information that "merely adds detail" to publicly disclosed elements does not materially add to them. *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 302–03 (4th Cir. 2017).

**5. The Eastern District of Tennessee's Recent Decision Confirms that This Record Compels Dismissal.**

In candor to the Court, the Association notes that on September 14, 2026, the Eastern District of Tennessee denied a series of motions to dismiss raising the public disclosure bar in a parallel PPP qui tam action brought by this same Relator. *United States ex rel. The Tarbell Group LLC v. Bristol TN-VA Ass'n of Realtors*, No. 1:25-cv-111, ECF No. 149 (E.D. Tenn. Sept. 14, 2026). Far from counseling against dismissal, that decision maps precisely the evidentiary showing that compels dismissal here—a showing this Motion makes.

*First*, the *Bristol* court granted the moving defendants' request for judicial notice of the same categories of public sources presented here, confirming that such materials are properly before the Court on a Rule 12(b)(6) motion invoking the public disclosure bar. *Id.* at 4 n.4, 12. *Second*, the court denied the motions solely because of evidentiary gaps. The moving defendants' exhibits either made "no reference to the Defendants' specific 501(c) classification" or failed to "show that the relevant PPP-Loan information was publicly available before Plaintiff filed his complaint." *Id.* at 7–9. The court explained that each defendant "must show that its 501(c) classification and participation in the PPP Program was publicly available before Plaintiff filed suit, as Plaintiff's claims of fraud can be inferred from such information." *Id.* at 8 & n.6. And the

court observed that the defendants in *Terrible Herbst* had "relied on web archives" to prove what was publicly available when the relator filed its complaint, whereas no *Bristol* defendant had done so. *Id.* at 8 n.5.

The Association's exhibits supply exactly what was missing in *Bristol*. These include judicially noticeable records establishing (1) the Association's receipt and forgiveness of its PPP loan (the SBA's database and ProPublica); (2) the Association's specific 501(c)(5) classification (the IRS's EO BMF, the Association's Form 990 filings, and ProPublica's Nonprofit Explorer); and (3), through dated Internet Archive captures, that both categories of information were publicly available before Relator filed suit. Indeed, the *Bristol* court itself recognized "a significant likelihood that the public-disclosure bar will apply" to this Relator's claims once a proper evidentiary record was made, and it ordered expedited summary judgment briefing on that very issue rather than subject the parties to discovery. *Id.* at 11–12. Numerous other courts have applied the public disclosure bar to dismiss materially identical PPP-based qui tam claims where, as here, the record established the public sources.[7] This Court should do the same and dismiss the claims against the Association now, sparing the parties and the Court the burdens the FCA's gatekeeping provisions exist to prevent.

---

[7] *See, e.g.*, *United States ex rel. Relator LLC v. Cardinalli*, No. 5:23-cv-00113-HDV-DTB, 2026 WL 391430 (C.D. Cal. Feb. 9, 2026) (Rule 12(b)(6) dismissal with prejudice, taking judicial notice of PPP loan information and organizational status from SBA databases, ProPublica, and Forbes, and applying the public disclosure bar); *United States ex rel. Relator LLC v. Kellog*, No. 23-CV-118-CAB-BLM, 2025 WL 897439, at *3–5 (S.D. Cal. Mar. 24, 2025); *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470, at *4–5 (E.D. Cal. Aug. 6, 2024); *Seikel*, 2024 WL 1315869, at *4; *Relator LLC v. Lim*, No. 22-cv-04715-AGT, 2025 WL 4052367, at *3–4, *7 (N.D. Cal. Apr. 22, 2025); *United States v. Minnesota Orchestral Ass'n*, No. CV 23-3216 (PAM/SGE), 2025 WL 1953120, at *3–4 (D. Minn. July 16, 2025); *United States ex rel. Akeel & Valentine, PLC v. Napleton Auto Grp., Inc.*, No. 24 CV 00047, 2025 WL 2930796, at *7–9, *12 (N.D. Ill. Oct. 15, 2025), appeal docketed, No. 25-3220 (7th Cir. Dec. 10, 2025).

**B. The FAC Fails to Plead Falsity, Scienter, or Materiality Against the Association.**

The public disclosure bar aside, the counts against the Association fail on their own terms. Two reach it: the First Cause of Action, directed at first-draw applications under § 3729(a)(1)(A) and (a)(1)(B), and the Fourth, directed at forgiveness applications under § 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G), both built on the same premise of 501(c)-based ineligibility. FAC ¶¶ 92–98, 111–118.

Section 3729(a)(1)(A) reaches the knowing presentment of a false claim to the government. *United States ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185, 193 (4th Cir. 2022). Section 3729(a)(1)(B) reaches knowingly making a false statement or record material to such a claim. *Id.* And § 3729(a)(1)(G), the "reverse" provision, concerns the improper withholding of money or property owed to the United States. *United States ex rel. Wheeler v. Acadia Healthcare Co.*, 127 F.4th 472, 495 (4th Cir. 2025). Whatever the theory, a relator must "allege four elements: (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir. 2022). "Failure to adequately allege any of these elements dooms a claim." *Id.* The FAC fails on three of the four.

**1. Falsity Is Not Pled with Particularity.**

Falsity requires "an objective falsehood," *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008), pled with Rule 9(b) particularity, the "who, what, when, where, and how" of the fraud, *Nicholson*, 42 F.4th at 195. The FAC supplies none of them for the Association.

The reason is structural. Relator pleads in bulk, lumping dozens of Defendants into each count without differentiating anyone's conduct. *See United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 281 n.9 (4th Cir. 2014) (a plaintiff must identify each defendant's culpable conduct with particularity rather than grouping defendants together). Bulk pleading leaves every particular missing here. *Who* at the Association prepared or presented any application, and whether that person had authority to act for it, goes unstated. *What* was submitted goes unstated. Relator gestures at "first-draw" and "forgiveness" applications generically, though multiple standardized SBA forms existed, and identifies no supporting documentation. *When* any application was completed, signed, or presented goes unstated, the loan table carries only the SBA's own approval and forgiveness dates. *See Seikel v. Alvarez*, No. 1:23-cv-01, 2024 WL 1315869, at *13 (N.D.W. Va. Mar. 27, 2024) (dismissing a PPP-based FCA claim in part because the complaint did not plead when the applications were submitted). Neither the *where*, the lender, nor the *how* appears anywhere in the pleading. Both counts against the Association share these defects, and both should be dismissed with prejudice under Rule 9(b).

**2. No Facts Support Scienter.**

Scienter is a "rigorous" element. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). Noncompliance with federal rules is not, by itself, an FCA violation, *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 379–81 (4th Cir. 2015); the relator must plausibly plead "actual knowledge, deliberate ignorance, or reckless disregard of [] truth or falsity," *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 703 (4th Cir. 2014) (citing 31 U.S.C. § 3729(b)(1)). The inquiry is subjective: the scienter element turns on the defendant's own "knowledge and subjective beliefs — not to what an objectively reasonable person may have known or believed." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S.

739, 749 (2023). Writing the word "knowingly" is not pleading it; a relator must "set[] forth specific facts that support an inference" of scienter. *United States ex rel. Complin v. N.C. Baptist Hosp.*, 818 F. App'x 179, 183 (4th Cir. 2020).

The FAC offers nothing of the kind as to the Association. Its scienter case is two sentences, fired at "[e]ach defendant" and unnamed "individual defendants acting on its behalf." FAC ¶¶ 97, 117. No individual is named. No communication, internal document, or circumstance is described. Nothing is alleged about what any person at the Association subjectively knew or believed. Relator does not say who at the Association prepared or submitted anything, when, or through which lender. And nothing pled suggests that anyone at the Association understood, in June 2020, that the PPP's eligibility rules excluded 501(c)(5) organizations — rules the government itself revised again and again over the program's life before opening it to 501(c)(5) organizations like the Association. *See* FAC ¶¶ 80–86.

Knowledge pled by the group is a conclusion, and conclusions are disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009). Once they are set aside, the most the FAC alleges is that an ineligible applicant, a small trade association whose one loan totaled $16,417.00, applied. The FCA does not punish "honest mistakes or incorrect claims submitted through mere negligence." *Drakeford*, 792 F.3d at 381. The absence of scienter facts independently requires dismissal with prejudice.

**3. Materiality Is Not Pled with Particularity.**

A misrepresentation is material only if it "ha[s] a natural tendency to influence, or [is] capable of influencing, the payment or receipt of money or property," 31 U.S.C. § 3729(b)(4), and materiality "cannot be found where noncompliance is minor or insubstantial," *Escobar*, 579 U.S. at 194. Rule 9(b) governs this element no less than falsity.

The FAC's materiality pleading is a single recited sentence: "Each such certification was required as a material prerequisite to receive a PPP Loan." FAC ¶ 96; *see also id.* ¶¶ 78–79, 116. That is a legal conclusion wearing the word "material," and it is disregarded under *Iqbal*, 556 U.S. at 678–80, therefore leaving the element unpled. Relator alleges nothing about how any certification actually influenced the SBA's decisions on the Association's loan or its forgiveness.

*Escobar*'s inverse inferences confirm the failure. Consistent government refusal to pay upon noncompliance with a requirement is strong evidence the requirement is material; routine payment despite known noncompliance, with no signaled change of position, is strong evidence it is not. 579 U.S. at 195. Relator pleads no refusals; furthermore, the public record runs the other way. The SBA issued approximately 11.5 million PPP loans and forgave approximately 10.6 million of them. *See* Pandemic Response Accountability Committee, *Paycheck Protection Program* (Oct. 23, 2023), https://www.pandemicoversight.gov/data-interactive-tools/dashboards-datasets/ppp-dashboard. Speed, not scrutiny, was the program's design. Congress and the SBA moved money "expeditiously" through delegated lender authority and streamlined requirements, 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020), with the SBA permitting "lenders to rely on certifications of the borrower in order to determine eligibility of the borrower." *Id.* The government, in short, chose an expedited process over its usual diligence. *United States ex rel. Animal Legal Defense Fund v. Holden Farms, Inc.*, No. 21-2061 (JRT/DJF), 2024 WL 2728451, at *12–13 (D. Minn. May 24, 2024). "The government must have known that some loan recipients would run afoul of their broad attestation of legal compliance, yet it still dispersed nearly $800 billion under the PPP with minimal oversight. . . . Under these circumstances, the government did not view as material regulatory violations that technically ran afoul of the loan certification

language." *Id.* With materiality neither pled with particularity nor plausible on this record, all counts against the Association fail under Rule 9(b).

**C. The Reverse False Claim Duplicates the Direct Claims.**

The direct provisions target money wrongfully obtained from the government, 31 U.S.C. § 3729(a)(1)(A); the reverse provision targets money wrongfully withheld from it, *id.* § 3729(a)(1)(G), and "the Government's ability to pursue reimbursement for overpayments or fraudulently induced payments does not constitute an obligation" supporting a reverse claim. *United States ex rel. Elgasim Mohamed Fadlalla v. DynCorp Int'l, LLC*, 402 F. Supp. 3d 162, 191 (D. Md. 2019). A relator accordingly "cannot properly allege a reverse false claim that is premised on the same conduct" as its § 3729(a)(1)(A) and (a)(1)(B) theories. *Id.*; *United States ex rel. Maharaj v. Estate of Zimmerman*, No. DLB-18-2998, 2020 WL 4501464, (D. Md. Aug. 5, 2020) (dismissing a reverse false claim resting on the same allegedly fraudulent conduct); *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119–20 (2d Cir. 2021) (agreeing that "a reverse false claim cannot turn on the same conduct underlying a traditional false claim").

That is all the Fourth Cause of Action does. Its § 3729(a)(1)(G) theory rides on the identical facts pled for the direct theories. The FAC alleges no separate obligation owed to the government anywhere. FAC ¶ 118. The claim is therefore not "reverse" at all. *Fadlalla*, 402 F. Supp. 3d at 191 (citing *United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 733 (D.S.C. 2017) ("[I]f the conduct that gives rise to a traditional presentment or false statement action also satisfies the demands of section 3729(a)(1)(G), then there would be nothing 'reverse' about an action brought under that latter section of the FCA.")). The reverse false claim in the Fourth Cause of Action should be dismissed with prejudice.

**D. Dismissal Should Be with Prejudice Because Amendment Would Be Futile.**

Relator has already amended once, recasting its pleading after the first wave of motions to dismiss materially identical complaints in other districts. The defects identified above are not the kind amendment can cure: no new pleading can un-publish the SBA's and the IRS's records, transform a stranger into an original source, or supply allegations about the Association's state of mind that Relator has never claimed to possess. Leave to amend is properly denied, and dismissal entered with prejudice, where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wilson*, 525 F.3d at 379 (affirming denial of leave to amend where the proposed complaint could not satisfy Rule 9(b)); *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

## V. CONCLUSION.

For each of these independent reasons, Defendant Maryland Watermen's Association Inc. respectfully requests that the Court dismiss with prejudice all claims asserted against it in the First Amended Complaint, enter judgment in the Association's favor, and award the Association its fees and costs incurred in bringing this Motion.

Dated: September 25, 2026.

Respectfully submitted,

*/s/ Kaitlyn A. Loughner*
Kaitlyn A. Loughner, Esq. (Bar No. 19284)
kaitlyn.loughner@askfrost.com
Zachary J.T. Lyda, Esq. (Bar No. 31399)
zachary.lyda@askfrost.com
Rebecca Sheppard, Esq. (Bar No. 20143)
rebecca.sheppard@askfrost.com
839 Bestgate Rd., Ste. 400
Annapolis, Maryland 21401
Tel: (410) 497-5947

Fax: (888) 235-8405
Counsel for Defendant Maryland Watermen's
Association Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25 day of September, 2026, a copy of Defendant Maryland Watermen's Association Inc.'s Memorandum in Support of Its Motion to Dismiss First Amended Complaint was filed with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to all counsel of record, and copies were served on:

Bruce Ellis Fein, Esquire
Bruce Ellis Fein PLLC
P.O. Box 506
Great Falls, Virginia 22066
bruce@newdream.net
Attorney for Plaintiff/Relator

/s/ Kaitlyn A. Loughner
Kaitlyn A. Loughner, Esq. (Bar No. 19284)