**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | | |
|---|---|---|
| THE TARBELL GROUP, LLC, | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| vs. | * | Civil Action No.: 1:25-cv-00915-MJM |
| | * | |
| AMERICAN ACADEMY OF ENVIRONMENTAL ENGINEERS AND SCIENTIST INC., *et al*. | * * * | |
| | * | |
| *Defendants* | * | |

*****************************************************************************

**MEMORANDUM IN SUPPORT OF DEFENDANT THE GRAND LODGE OF ANCIENT FREE AND ACCEPTED MASONS OF MARYLAND'S MOTION TO DISMISS**

**Table of Contents**

**INTRODUCTION** ........ 5

**FACTUAL ALLEGATIONS** ........ 6

**STANDARD OF REVIEW** ........ 9

**ARGUMENT** ........ 10

**I. Relator Fails to State a Claim or Meet the Standards Set Forth under Federal Rules of Civil Procedure, Rules 8(a), 9(b), and 12(b)(6).** ........ 10

**A. Relator Failed to Plead Falsity with the Required Particularity.** ........ 11

**B. Relator Failed to Plead Sufficient Facts Regarding Scienter.** ........ 12

**C. Relator Failed to Plead Materiality with Particularity.** ........ 13

**D. Relator's Reverse False Claim Fails to Allege an Independent Obligation.** ........ 15

**II. The FCA Public Disclosure Bar Requires Dismissal of this Case.** ........ 16

**A. The Allegations in the FAC Were Publicly Disclosed.** ........ 17

**B. Public Disclosed Information is the Basis for the Case and Triggers the Public Disclosure Bar.** ........ 20

**C. Relator is not an Original Source.** ........ 22

**CONCLUSION** ........ 23

## Table of Authorities

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 9, 14
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 9
*Bowers v. Legum & Norman Realty, Inc.*, 776 F. Supp. 3d 294 (D. Md. 2025) ........................... 11
*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ……...................... 9
*Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096 (D. Haw. 2021) ........................................................................................................................................ 16
*Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011) ............................. 19
*United States ex rel. Ahumada v. NISH*, 756 F.3d 268 (4th Cir. 2014) ....................................... 12
*United States ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006) .................................. 10
*United States ex rel. Beauchamp v. Academi Training Center, LLC*, 816 F.3d 37 (4th Cir. 2016) .................................................................................................................................. 6, 18, 20
*United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724 (D.S.C. 2017) ............................ 16
*United States ex rel. Branscome v. Blue Ridge Home Health Services, Inc.*, No. 16-00087, 2018 WL 1309734 (W.D. Va. Mar. 13, 2018) ..................................................................................... 16
*United States ex rel. Burke v. St. Jude Medical, Inc.*, No. 16-3611-SAG, 2021 WL 6135202 (D. Md. Dec. 29, 2021) ......................................................................................................... 21
*United States ex rel. Complin v. North Carolina Baptist Hospital*, 818 F. App'x 179 (4th Cir. 2020) ........................................................................................................................... 13
*United States ex rel. Doe v. John Doe*, 960 F.2d 318 (2d Cir. 1992) ............................................. 6
*United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015) ............................ 13–14
*United States ex rel. Fadlalla v. DynCorp International LLC*, 402 F. Supp. 3d 162 (D. Md. 2019) ........................................................................................................................................ 16
*United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d Cir. 2021) ....................................... 16
*United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190 (4th Cir. 2018) ...................... 10
*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ................................ 10
*United States ex rel. Landis v. Tailwind Sports Corp.*, 160 F. Supp. 3d 253 (D.D.C. 2016)........ 16
*United States ex rel. Lasko v. Minnesota Orchestral Ass'n*, No. 23-3216, 2025 WL 1953120 (D. Minn. July 16, 2025) ............................................................................................................... 19
*United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636 (4th Cir. 2016) ................... 17, 22
*United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013) ................................................................................................................................ 10
*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185 (4th Cir. 2022) ......... 12
*United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015) ........................... 18
*United States ex rel. Relator LLC v. Cardinalli*, 833 F. Supp. 3d 1072 (C.D. Cal. 2026)............ 21
*United States ex rel. Relator LLC v. Kasam*, No. 2:22-cv-05198-HDV-JCX, 2025 WL 3724905 ........................................................................................................................................ 21
*United States ex rel. Relator LLC v. Nations Direct Mortgage*, No. 2:22-cv-04784-SPG-MAA, 2026 WL 453464 (C.D. Cal. Jan. 5, 2026)...................................................................... 21
*United States ex rel. Relator LLC v. Shupe*, No. 2:23-cv-00504-WLH-JPR, 2025 WL 4000282 (C.D. Cal. Nov. 13, 2025) .......................................................................................................... 21
*United States ex rel. Relator LLC v. Sunshine*, No. 8:23-cv-00134-JVS-ADS, 2025 WL 2428470 (C.D. Cal. June 30, 2025) .......................................................................................................... 21

*United States ex rel. Relator LLC v. Uhler*, No. 2:23-cv-00499-CAS-MBK, 2025 WL 4350115 (C.D. Cal. Oct. 6, 2025) .......... 21
*United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694 (4th Cir. 2014) .......... 13
*United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339 (4th Cir. 1994) .......... 17
*United States ex rel. Springfield Terminal Railway Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) .......... 21
*United States ex rel. Taylor v. Boyko*, 39 F.4th 177 (4th Cir. 2022) .......... 11
*United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375 (5th Cir. 2003) .......... 10
*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008) .......... 10, 12–13
*Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) .......... 13–15
*WP Co. v. U.S. Small Business Administration*, 502 F. Supp. 3d 1 (D.D.C. 2020) .......... 18

**Statutes**

False Claims Act, 31 U.S.C. § 3729 *et seq.* .......... 5, 7, 10–12, 16
31 U.S.C. § 3729(a)(1)(A), (B), and (G) .......... 5, 7, 10–12, 14, 16
31 U.S.C. § 3729(a) and (b)(1) .......... 5, 7, 10–12, 14, 16
31 U.S.C. § 3729(b)(4) .......... 5, 7, 10–12, 14, 16
31 U.S.C. § 3730(e)(4)(A) .......... 6, 16, 20, 22–23
31 U.S.C. § 3730(e)(4)(B) .......... 6, 16, 20, 22–23
26 U.S.C. § 6104 .......... 18
IRC § 501(c)(6) .......... 7, 19, 21
IRC § 501(c)(8) .......... 7, 19, 21
Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) .......... 6, 18
CARES Act § 15010(b) .......... 18
Paycheck Protection Program Flexibility Act, Pub. L. No. 116-142 (2021) .......... 5–7, 14
American Rescue Plan Act, Pub. L. No. 117-2 (2021) .......... 6

**Rules**

Federal Rule of Civil Procedure 8(a) .......... 5–6, 10, 23
Federal Rule of Civil Procedure 9(b) .......... 5–6, 9–15, 23
Federal Rule of Civil Procedure 12(b)(6) .......... 5–6, 9–12, 23

Defendant the Grand Lodge of Ancient Free and Accepted Masons of Maryland ("Grand Lodge"), through its undersigned counsel, moves to dismiss this False Claims Act ("FCA"), 31 U.S.C. §3729 *et seq.*, *qui tam* action under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) and in support thereof states as follows:

**INTRODUCTION**

The Tarbell Group, LLC ("Relator") is a Virginia limited liability company that was recently formed in 2024. The Relator's apparent purpose is to file litigation from publicly available information related to the loans given to businesses under the Paycheck Protection Program ("PPP"). The information regarding these loans is publicly available to everyone. The Relator has filed cookie cutter cases like this one across the United States of America in an attempt to gain financially from non-profit organizations who unwittingly opt to settle the matter instead of face the possibility of litigation. The Relator is otherwise exploiting organizations who do not possess the funds to defend the suit, let alone pay any sort of judgment or other amounts levied against them.

The First Amended Complaint (ECF No. 8, "FAC") reads like that of a spreadsheet where the Relator simply dropped a new name into a previously fabricated statement repeatedly. The information used in the FAC is publicly available through the data of the Small Business Administration ("SBA"), which is easily accessible on PandemicOversight.gov and republished by ProPublica, and the nonprofits' own IRS Forms 990 tax returns, viewable on the IRS's website. It is pleaded identically to each defendant in that the tax-exempt organization certified its PPP eligibility on a date when its 501(c) subsection had not yet been made eligible for a PPP loan.

This litigation is the exact sort of "parasitic" or "opportunistic" *qui tam* actions that the FCA was designed to stop. The FCA does not allow an opportunist such as the Relator to compile

publicly available information and reform it into its own fraud case. *United States ex rel. Beauchamp v. Academi Training*, 816 F.3d 37, 43 (4th Cir. 2016); *United States ex rel. Doe v. John Doe*, 960 F.2d 318, 321 (2d Cir. 1992) (a relator cannot obtain "quick cash" by using publicly available information.).

This Court should dismiss the FAC in its entirety, with prejudice. The public disclosure bar of the FCA mandates if a claim has "substantially the same allegations or transactions" alleged in the complaint that "were publicly disclosed," then it must be dismissed. 31 U.S.C. §3730(e)(4)(A). The recycling of information already disclosed, unless the Relator is the original source, is prohibited. Relator does not plead falsity, scienter, or materiality with the particularity demanded for FCA claims under Rules 8(a), 9(b), and 12(b)(6). Therefore, the Court should dismiss the FAC with prejudice.

**FACTUAL ALLEGATIONS**

Congress created the Paycheck Protection Program in March of 2020 through the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 as a way to provide emergency funding ("PPP loans") to businesses that had been impacted by the COVID-19 pandemic. FAC ¶ 74. It was subsequently amended by the Paycheck Protection Program Flexibility Act, Pub. L. 116-142 (2021), and the American Rescue Plan Act, Pub. L. 117-2 (2021). *Id.* The PPP loans were private loans guaranteed, forgiven, and reimbursed by the SBA. *Id*.

To receive a PPP loan, each applicant was required to complete, sign, and submit to a participating lender a borrower application form prescribed by the SBA. FAC ¶ 78. On that form, the applicant was required to certify, among other things, that it was eligible to receive a PPP loan under the rules in effect at the time of the application. *Id*. A similar SBA form and certification was required for the forgiveness of loans. *Id*. The Relator alleged that organizations that are tax exempt

under IRC §501(c)(6) became eligible for PPP loans on December 27, 2020. FAC ¶ 82. The PPP excluded private clubs from being eligible for loans. FAC ¶ 87. The FAC's attached table indicates that the Grand Lodge received a PPP loan in the amount of $220,000.00 on April 5, 2020. *See* FAC, ECF 8, Attachment at 3.

The Grand Lodge is a tax-exempt organization under IRC §501(c)(8) and is a private organization located at 304 International Circle, Cockeysville, MD 21030. FAC ¶ 63. It is a private organization that has a screening process for new members who may petition the organization. *Id.* An individual seeking to join the organization must be at least 18 years of age, a man of good moral character, resided in Maryland for at least the last 12 months, recommended by 2 current members, submit to an investigation committee assigned by the membership, and receive a favorable ballot before being admitted. *Id.*

The counts set forth in the FAC plead allegations against groups of defendants unless specifically excluded. The term "Defendant" or "Defendants" refers to the collective group of parties, including Grand Lodge.

The Relator's first cause of action is against First-Draw PPP Loan Applications. The Grand Lodge is included in the list of Defendants for the first cause of action. *See* FAC ¶ 93. The Defendants needed to certify that "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program…" FAC ¶ 94. Relator claims that these were "false certifications, each such defendant and the individual defendants acting on its behalf did knowingly present, or cause to be presented, a false claim for payment or approval, and did knowingly make, use, or cause to be made or used, a false record or statement material to a false claim," ultimately violating 31 U.S.C. 3729(a)(1)(A) and (B). FAC ¶ 98.

Because of the Grand Lodge's 501(c)(8) status, the Relator claims it was ineligible to receive the loan. FAC ¶ 97.

The Grand Lodge was not included in the Relator's second cause of action as it did not apply for or receive a second draw on the PPP loan.

The third cause of action is specifically against private club defendants. The Grand Lodge is listed as a private club under this count. FAC ¶ 106. The Relator indicates that each of the private club defendants applied for and received at least one PPP Loan. FAC ¶ 107. Similar to the first cause of action, the Relator alleges that the entity needed to certify their eligibility to receive the loan and that the certification provided by these defendants was false. FAC ¶ 108, 109.

For its fourth cause of action, Relator claims that the defendants who applied for PPP loan forgiveness falsely certified "The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects." FAC ¶ 114. Relator again, as before, asserts that by making these assertions the certification was knowingly false and committed a fraudulent act against the United States Government in an effort to avoid paying its obligations. FAC ¶ 118.

The Grand Lodge was not included in the Relator's fifth cause of action as it did not apply for loan forgiveness of a second draw of the PPP loan.

The sixth cause of action, like the third, was directed only at private club defendants. It is again alleged that the Grand Lodge, as a private club, sought out PPP loan forgiveness. FAC ¶ 128. The same matters that were addressed in the fourth cause of action are asserted here against the private clubs similarly to the first and third causes of action with seeking out the PPP loan. The Relator again alleges that on the forgiveness application, the Grand Lodge certified "The information provided in this application and the information provided in all supporting documents

and forms is true and correct in all material respects." FAC ¶ 129. Again, it is stated that the organization as a private club defendant did knowingly make a false statement or certification in an attempt to sidestep its obligations. FAC ¶ 134.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 554, 570 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action with not do." *Id*. At 555. While the Court must accept well-pleaded factual allegations, it disregards "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim under the FCA requires proof that (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a "claim"). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999) ["*Harrison I*"].

Claims under the FCA are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which require Tarbell to "state with particularity the circumstances constituting fraud or mistake," though knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). This is often "referred to as the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc*, 336 F.3d 375, 384 (5th Cir. 2003)). A "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison I*, 176 F.3d at 783 n.5. Rule 9(b) also shields FCA defendants from

frivolous allegations of fraud that cause undeserved "harm to their goodwill and reputation." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013). The protective measures of Rule 9(b) are important in the FCA context, where they apply with "special force." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018); *see also Takeda Pharm. N. Am., Inc.*, 707 F.3d at 456 ("Indeed, such purposes may apply with particular force in the context of the [FCA], given the potential consequences flowing from allegations of fraud by companies who transact business with the government.").

As whistleblowers have "strong financial incentives to bring an FCA claim," courts recognize that Rule 9(b) acts as an "especially important" check on those incentives by "[r]equiring relators to plead FCA claims with particularity." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006); *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009) ("Rule 9(b) also prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'").

## ARGUMENT

### I. Relator Fails to State a Claim or Meet the Standards Set Forth under Federal Rules of Civil Procedure, Rules 8(a), 9(b), and 12(b)(6).

The FAC sets forth six causes of action or counts all brought under the False Claims Act, 31 U.S.C. §3729. The first three causes of action are styled under §3729(a)(1)(A) and (B). The last three causes of action are styled under §3729(a)(1)(A), (B), and (G). Respectively, the causes of action are for defendants who received money under the PPP who were ineligible, defendants who received a second draw under the PPP who were ineligible, defendants who are identified as "Private Clubs" or "Private Organizations" who received PPP money regardless of the number of draws who were ineligible, defendants who received forgiveness of their first draw PPP loan who

were ineligible, defendants who received forgiveness of their second draw PPP loan, and defendants who are identified as "Private Clubs" or "Private Organizations" who received forgiveness of either a first or second draw PPP loan who were ineligible. FAC ¶¶ 92-134.

To prevail on a claim under 31 U.S.C. §3729(a)(1)(A), (B), and (G), Relator must prove four elements: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due." *Harrison I*, 176 F.3d at 788; *see also United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir. 2022) (the court further expanded on the elements that "[f]ailure to adequately allege any of these elements dooms a claim.").

All claims under the FCA are based in fraud and are therefore subjected to the heightened pleading requirements of Rule 9(b). Relator fails to meet even the plausibility requirement that Rules 8 and 12(b)(6) require to state causes of action against the Grand Lodge and falls well short of meeting the particularity required to allege fraud under Rule 9(b). "The purpose of Rule 9(b) is 'to prevent frivolous suits, stop fraud actions where everything is learned after discovery (i.e., fishing expeditions), and to protect defendants' reputations.'" *Bowers v. Legum & Norman Realty, Inc.*, 776 F.Supp.3d 294, 304 (D. Md. 2025) (quoting *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022)).

**A. Relator Failed to Plead Falsity with the Required Particularity.**

The Relator must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson*, 525 F.3d at 379. The heightened pleading requirements of Rule 9(b) require a Relator to plead the "who, what, when, where, and how" of the alleged fraud. *Nicholson*,

42 F.4th at 195. A "lack of compliance with Rule 9(b)'s pleading requirements is treated as failure to state a claim under Rule 12(b)(6)." *Harrison I*, 176 F.3d at 783 n.5.

The FAC is improperly drafted by the Relator to group together multiple defendants to allege each count. *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 281 n. 9 (4th Cir. 2014) (the court found that the plaintiff must identify with particularity each defendant's culpable conduct and prohibiting the defendants from being grouped together without identifying which defendant committed which wrong). The Relator fails to identify any specific facts about the Grand Lodge, or any defendant for that matter, as to who may have presented the false claim or prepared the application. The FAC does not identify the application form or attach it to the FAC, or any of the supplemental documentation. Relator merely restates the pre-printed certifications on the form. The FAC is deficient of any facts as to when the application may have been completed. The Relator fails to identify where or how the applications were made that are the basis for the claim. The Relator does not identify any of the third parties that may have been acting on behalf of a defendant.

The Relator's omissions and failure to properly plead each count is true throughout the FAC for all defendants. As the Relator failed to plead falsity with particularity as required by Rule 9(b), the Court must dismiss the FAC with prejudice and judgment should be entered in favor of the Grand Lodge.

**B. Relator Failed to Plead Sufficient Facts Regarding Scienter.**

A Relator must "plausibly allege" all of the elements of an FCA claim, including scienter – that is the fraud was committed with "actual knowledge, deliberate ignorance, or reckless disregard of [] truth or falsity." *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 703 (4th Cir. 2014) (citing 31 U.S.C. §3729(a), (b)(1)). Scienter is a critical element of any FCA claim. *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). A

defendant does not automatically become liable under the FCA for disregarding federal regulations. *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 379-81 (4th Cir. 2015). A relator may not make general or conclusory allegations that the defendant "knowingly" submitted false claims. *United States ex rel. Complin v. N.C. Baptist Hosp.*, 818 Fed. App'x 179, 183 (4th Cir. 2020). A relator must "set forth specific facts that support an inference" of scienter. *Complin*, 818 Fed. App'x. at 183 (citing *Wilson* 525 F.3d at 379).

Here the Relator does not plead any facts beyond his boilerplate paragraphs that each defendant knowingly made false statements and presented false claims. The Relator does not plead any facts regarding the Grand Lodge's scienter and therefore falls short of Rule 8's plausibility standard. Relator again, does not identify who at the Grand Lodge might have created the application, or if it was even created by them and not by the lender. Relator does not make any assertions that the Grand Lodge knew of the eligibility requirements at the time the application was submitted. The Relator's boilerplate statements throughout the FAC are nothing more than a conclusory allegation. These types of allegations are the exact kind that *Iqbal* and *Twombly* reject.

At best, Relator has stated that Grand Lodge were ineligible for a PPP loan but applied anyway. The FCA does not punish "honest mistakes or incorrect claims submitted through negligence." *Drakeford*, 792 F.3d at 380. Relator has failed to plead that the Grand Lodge, or any other defendant, acted with the necessary scienter as the FAC is void of any such facts. Therefore, the Relator failed to plead scienter and the Court must dismiss its claims with prejudice and enter judgment in favor of the Grand Lodge.

### C. Relator Failed to Plead Materiality with Particularity.

One of the elements of a FCA violation is materiality. A misrepresentation is material only if it "ha[s] a natural tendency to influence, or [is] capable of influencing, the payment or receipt of

money or property." 31 U.S.C. §3729(b)(4). Materiality "cannot be found where noncompliance is a minor or insubstantial." *Escobar*, 579 U.S. at 194. Materiality is also subject to Rule 9(b)'s heightened pleading requirement.

Relator does not plead any facts that would demonstrate that the misrepresentation in the boiler plate statement was material to the decision by the SBA to fund or forgive the Grand Lodge's PPP loan. Relator only makes a vague conclusory statement that "[s]uch certification was material to, and a prerequisite of, the approval and disbursement of each PPP Loan and SBA's guarantee thereof." FAC ¶¶ 78, 108; *see also* FAC ¶¶ 79, 130 (Relator makes similar assertions for the forgiveness of the loans). Relator makes a general assertion that but for these certifications, the SBA would not have approved the PPP loans. FAC ¶¶ 78-79. The Court has held that such conclusory and vague statements should be disregarded. *Iqbal*, 556 U.S. at 678-680; *see also* *Escobar*, 579 U.S. at 192 ("[A] misrepresentation must be material to the Government's payment decision in order to be actionable" under the FCA.).

Relator does not plead any facts that demonstrate the alleged misrepresentation about the Grand Lodge's eligibility affect the SBA's decision to grant the PPP loan or to subsequently forgive it. The FAC indicates that the SBA approved all of the PPP loans for the defendants with full knowledge of their identities and the tax-exempt statuses. The fact that the SBA approved the loans lends itself that any claimed misrepresentation as to the PPP loan eligibility was immaterial. In *Escobar*, the Court stated "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." 579 U.S. at 195.

The SBA issued approximately 11.5 million PPP loans and forgave 10.6 million. *See* Pandemic Response Accountability Committee, *Paycheck Protection Program* (Oct. 23, 2023),

https://www.pandemicoversight.gov/data-interactive-tools/dashboards-datasets/ppp-dashboard. These loans were meant to help the American people during a time of crisis. The Relator now seeks to exploit tax-exempt organizations claiming their dishonest abuse of process for something that if it had been material, would have been closely monitored. From a review of the data mentioned above, it does not appear that any loan was denied where the applicant was ineligible. If this were material, the Government would have rejected applications. The Relator fails to identify any facts as to the materiality of the claim sufficient enough to meet the heightened Rule 9(b) standard. Therefore, the FAC must be dismissed with prejudice and judgment entered in favor of the Grand Lodge.

**D. Relator's Reverse False Claim Fails to Allege an Independent Obligation.**

Unlike a "direct false claim" which is designed to extract money from the Government, a "reverse false claim" under Section 3729(a)(1)(G) of the FCA creates liability for the knowing use of a false record or statement material to an obligation to pay money to the Government so as to evade a debt owed to the Government. A viable reverse false claim must rest on an obligation to pay that exists independently of the fraudulent conduct through which the defendant allegedly obtained the government funds.

FAC's fourth and fifth cause of action are based upon the defendants' certification that it was entitled to forgiveness of the same PPP loan that Relator states the Grand Lodge falsely obtained, and that the Grand Lodge evaded the obligation it had to repay the Government the same funds that were subject of the direct false claim allegations in the first and second causes of action. This Court has rejected efforts of relators to redundantly assert a reverse false claim premised upon the theory that a defendant has an obligation to repay funds that are the subject of a direct false claim:

> Construed most favorably to Relators, the theory of liability rests on the proposition that had the Government known of Defendants' FCA violations, the Defendants would be required to reimburse the Government for monies disbursed under the contract. However, as a matter of law "the Government's ability to pursue reimbursement for overpayments or fraudulently induced payments does not constitute an 'obligation.'" [*United States ex rel. ]Landis [v. Tailwind Sports Corp*.], 160 F. Supp. 3d [253, ]269 [(D.D.C. 2016)]. Relators cannot properly allege a reverse false claim that is premised on the same conduct as Relators' claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B). *U.S. ex rel. Branscome v. Blue Ridge Home Health Servs., Inc*., No. 16-00087, 2018 WL 1309734, at *5 (W.D. Va. Mar. 13, 2018); *see also United States v. Berkeley Heartlab, Inc*., 247 F. Supp. 3d 724, 733 (D.S.C. 2017) ("And of course, if the conduct that gives rise to a traditional presentment or false statement action also satisfies the demands of section 3729(a)(1)(G), then there would be nothing 'reverse' about an action brought under that latter section of the FCA.") (citation omitted). Accordingly, Relators fail to plead an "obligation" owed to the Government.

*United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F.Supp.3d 162, 191 (D. Md. 2019); *see also United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119-20 (2d Cir. 2021), *Hawaii ex rel. Torricer v. Liberty Dialysis-Haw. LLC*, 512 F. Supp. 3d 1096, 1119-20 (D. Haw. 2021).

Relator fails to identify any independent obligation on the part of the Grand Lodge to repay the PPP loan it claims was falsely obtained in the first and second causes of action. Relator fails to plead any independent "obligation" owed to the Government the fourth and fifth causes of action should be dismissed for failing to plead an independent obligation to pay monies to the Government sufficient to support a reverse false claim under 31 U.S.C. §3729(a)(1)(G).

## II. The FCA Public Disclosure Bar Requires Dismissal of this Case.

The FCA's public disclosure bar directs the Court to "dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in (i) a federal criminal, civil, or administrative hearing; (ii) a federal report, hearing, audit, or investigation, or (iii) in the news media," unless the "person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The Supreme Court has consistently held that the FCA's public disclosure bar is

applied with a "generally broad scope," with both the sources of disclosure and the terms "allegations or transactions" interpreted expansively. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011). The FCA's public disclosure bar exists "to prevent 'parasitic' *qui tam* actions in which relators, rather than bringing to light independently discovered information of fraud, simply feed off of previous disclosures of government fraud." *United States ex rel. May v. Purdue Pharma, L.P.*, 811 F.3d 636, 642 (4th Cir. 2016) (quoting *United States ex rel. Siller v. Becton Dickinson & Co.*., 21 F.3d 1339, 1347 (4th Cir. 1994)). The Relator is not an original source of the information. Accordingly, the Court must dismiss the FAC with prejudice.

**A. The Allegations in the FAC Were Publicly Disclosed.**

Information regarding the PPP loans through the SBA were published through federal reports and news media reports prior to the initiation of this lawsuit. Knowledge of the Grand Lodge's receipt of PPP loans was already readily available to the general public. The SBA's website and PandemicOversight.gov published the dataset of all PPP loans. This information has been publicly available since a court order following a FOIA suit brought by news media against the SBA. *See WP Co. v. U.S. Small Bus. Admin.*, 502 F.Supp.3d 1 (D.D.C. 2020).

Defendant Grand Lodge, contemporaneously with the filing of its motion to dismiss, has filed a Request for Judicial Notice of certain information containing public disclosure that qualify under the public disclosure bar of the FCA. The Fourth Circuit has recognized the expansive interpretation of the term "public disclosure" under the Supreme Court's case law:

> Courts have unanimously construed the term "public disclosure" to include websites and online articles. *See Schindler Elevator Corp. v. United States ex rel. Kirk,* 563 U.S. 401, 408 (2011) ("The other sources of public disclosure in § 3730(e)(4)(A), especially 'news media,' suggest that the public disclosure bar provides 'a broad sweep.'"); *United States ex rel. Osheroff v. Humana Inc.,* 776 F.3d 805, 813 (11th Cir. 2015) (concluding that newspapers and publicly available websites qualified as "news media" under the public disclosure provision)).

*Beauchamp*, 816 F.3d at 43 n.6 (cleaned up).

PandemicOversight.gov is an official website of the Government, which was statutorily directed to be created by the Pandemic Response Accountability Committee by the passage of Section 15010(b) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. *See* Pub. Law 116-136, 134 Stat. 281, 534-40 (2020). Through this website, the general public can search for data on all entities who have received PPP loans and obtain the very data that Tarbell includes in its complaint. Applying *Schindler Elevator*'s broad definition of "report", the information provided by PandemicOversight.gov clearly qualifies as a "federal report" within the meaning of the public disclosure bar of Section 3730(e)(4)(A).

The SBA data set can be found in a publicly accessible database found at https://data.sba.gov/dataset/ppp-foia which houses several large comma separate values ("CSV") files with details on every PPP borrower, including each of the named defendants. The Grand Lodge's data can be found in the CSV titled "public_150k_plus_240930.csv" at row 439103. For each PPP loan, these data files include the loan number, date approved, the borrower's name and address, forgiveness amounts, forgiveness dates, lender names, business types, and the NAICS codes. The Supreme Court has recognized that an "agency response to a FOIA request falls within the ordinary meaning of 'report'" under the FCA. *Schindler Elevator*, 563 U.S. at 410-11. The fact that the Grand Lodge received a PPP loan when it was not eligible was publicly available for years before Relator brought this action.

The IRS makes Form 990 returns available to the public under 26 U.S.C. §6104, and are accessible through IRS.gov and third-party databases like ProPublica's Nonprofit explorer. The Grand Lodge's tax-exempt status can be found by going to https://www.irs.gov/charities-non-profits/search-for-tax-exempt-organizations, following the button to open the organization search

tool, enter "Grand Lodge" into the search box for Organization Name and restrict the search to Maryland. The Grand Lodge of Ancient Free and Accepted Masons of Maryland appears as the second name on the search. The Form 990 return indicates that the organization is a 501(c)(8) tax-exempt corporation. Other federal district courts have considered IRS Form 990s made available by the IRS on the internet to be "federal reports" under the FCA. *See United States ex rel. Lasko v. Minnesota Orchestral Ass'n*, Civ. No. 23-3216, 2025 WL 1953120 at *3 (D. Minn. July 16, 2025).

In addition to these federal sources, all of which would meet the definition of a "federal report" under *Schindler Elevator*, the information about the defendants' PPP loans and 501(c)(8) status was republished by ProPublica.org, a member of the news media. ProPublica republished the SBA PPP data set and organized it through its "Tracking PPP" webpage, which contains information about all of the PPP loans extended to the Defendants herein. Likewise, searches for each the Grand Lodge on ProPublica's "Nonprofit Explorer" webpage returns the organization's 501(c)(8) nonprofit status and republishes its Form 990 tax returns from the IRS, which prominently state, on page one of each return, that the Grand Lodge is a 501(c)(8) organization. The Fourth Circuit has recognized that "[c]ourts have unanimously construed the term 'public disclosure' to include websites and online articles." *Beauchamp*, 816 F.3d at 43 n.6.[1] Thus, all of

[1] Other federal district courts have held that ProPublica is "news media" for purposes of the FCA's public disclosure bar. *See Sunshine*, 2025 WL 2428470, at *4 ("The Court finds that this source [ProPublica] qualifies as 'news media'…. ProPublica is a well-established news source that has curated a publicly available database tracking all approved PPP loans and providing information about the businesses receiving such loans."), *Cardinalli*, 833 F.Supp.3d at 1079 ("[T]his source qualifies as 'news media' under 31 U.S.C. § 3730(e)(4)(A)…. ProPublica's publishing of PPP loan information fits easily within this definition."), *Nations Direct Mortgage,* 2026 WL 453464, at *3 ("Because ProPublica.org falls within the ordinary meaning of 'news source'… the Court finds that it is a news source under 31 U.S.C. § 3730(e)(4)(A)(iii)."), *Kasam*, 2025 WL 3724905, at *3 ("[T]he non-profit investigative outlet, ProPublica, compiled a publicly accessible database of PPP recipients…. The Court further finds that this source qualifies as 'news media' under 31 U.S.C. § 3730(e)(4)(A)."), *Shupe*, 2025 WL 4000282, at *4 ("Defendants argue that the information published by Ventura County Star, Thousand Oaks, Golfweek and ProPublica qualify as 'news media'…. The Court agrees … these documents are 'news media' for purposes of the public disclosure bar."), *Uhler*, 2025 WL 4350115, at *5 (treating ProPublica republication of SBA report as qualifying public disclosure), *Minnesota Orchestral Ass'n*, 2025 WL 1953120, at *3.

the information that forms the foundation of Relator's allegations as it pertains to the 501(c)(8) defendants herein was publicly disclosed both through channels that meet the definition of "federal report" and through "news media" under 31 U.S.C. § 3730(e)(4)(A)(i), (iii).

The FAC relies on the Grand Lodge's private club status to allege its FCA violations. FAC ¶ 63. This information is publicly available, if not common knowledge to most individuals in light of its 240 plus year existence. The Grand Lodge's website notes that the organization is private with exclusive membership. The website contains information for becoming a member and has a link to inquire on membership where more details about the application for membership are disclosed. This information can be located by going to mdmasons.org. Once there, an individual can read the about MD Mason's information and click on a hyperlink at the top of the page to submit the inquiry for membership. The Grand Lodge's website qualifies as "news media" under 31 U.S.C. §3730(e)(4)(A) as it is a publicly available website disseminating information about the Grand Lodge to the public.

**B. Public Disclosed Information is the Basis for the Case and Triggers the Public Disclosure Bar.**

The FAC has a spreadsheet attached to it which contains all of the SBA information that is the basis for the Relator's lawsuit. This is the same information that is available through the SBA data set, PandemicOversight.gov, and ProPublica.org. The FCA's public disclosure bar is triggered by disclosure of "allegations or transactions." 31 U.S.C. §3730(e)(4)(A). The "transaction" trigger focuses on the disclosure of facts that collectively reveal all of the essential elements of the fraudulent "transaction," but without the explicit "allegation" of fraud. *United States ex rel. Burke v. St. Jude Med., Inc.*, No. 16-3611-SAG, 2021 WL 6135202, at *6 (D. Md. Dec. 29, 2021).

The Court in *Burke* used a test to determine if the "transaction" trigger comes from the disclosure of facts that are publicly available. Other federal circuits have also implemented similar tests to evaluate if the Relator's allegations are substantially similar to those that have been publicly disclosed. The "transaction test is commonly explained as follows:

> [I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e*., the conclusion that fraud has been committed. The language employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit *qui tam* actions *only* when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain.

*Id*. at *6 (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)). In this case, the information the Relator uses is *identical* to the information that is available from the sources discussed *supra*. The Relator only relies on the fact that the Grand Lodge obtained a PPP loan, the amount of the PPP loan, the date it was approved, the amount that was forgiven, the date it was forgiven, and the Grand Lodge's tax-exempt status. The Relator's allegations utilizing the X+Y=Z formula, are readily identified as public disclosure.

Here "X" is the misrepresented state of facts. According to Relator, each Defendant certified that it was eligible for a PPP loan at the time of its application. Yet, the SBA data set, ordered to be disclosed by the D.C. district court by November 27, 2021, republished at PandemicOversight.gov and at ProPublica.org, discloses the loan approval dates for each Defendant, revealing that each Defendant made such certification at or before the loan approval date. "Y" is the true state of facts. According to Relator, 501(c)(8) organizations similar to the Grand Lodge, were not eligible for PPP loans until December 27, 2020. This eligibility date was set forth in public legislation and regulations. The Grand Lodge's 501(c)(8) status is published on the IRS website. The Grand Lodge's private club status is published on its website.

The inference of fraud, "Z" comes from the comparison of the loan approval dates ("X") to the eligibility dates and tax-exempt status ("Y"). Thus, any member of the public (or any government agency, for that matter) could infer that certain organizations received PPP loans before they were eligible, which is the exact "fraud" that Relator alleges.

Relator's FAC does not contain any insider testimony, no former employee or officer statement, no whistleblower documents, and no documents obtained through any private, nonpublic communications with the Grand Lodge. The FAC fails to plead any indication of who actually completed the loan application and if they even had the authority. It also fails to acknowledge any communications or inducements from the lenders who were soliciting the defendants for these loans. Given that the Relator did not exist until May 17, 2024, it could not have been the original source for any of the necessary information needed to successfully litigate its claims and only could have obtained its information from publicly disclosed sources. There is no additional information added to the FAC that has not been readily available to the public prior to the institution of litigation.

**C. Relator is not an Original Source.**

The public disclosure bar can be avoided if the relator is an "original source" of the information. *See* 31 U.S.C. § 3730(e)(4)(A). An "original source" is defined as a person who either (i) "prior to public disclosure under subsection (e)(4)(A) has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based," or (ii) "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B). The Relator does not fall into either of these categories. It further does not allege in its FAC that it was the original source for any of the

information or that it was the party responsible for disclosing it to the Government before it filed the action on March 19, 2025. Relator does not allege or claim that it possesses "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B)(2).

Relator has not produced any facts that would indicate that it has any independent knowledge, or anything beyond the public disclosures, that would materially add to the information already available. Relator is not an original source. Accordingly, this Court must dismiss the FAC with prejudice and enter judgment in favor of the Grand Lodge.

**CONCLUSION**

For the reasons stated above, the Relator has failed to set forth its claims pursuant to Fed. R. Civ. P. Rule 8(a), 9(b), and 12(b)(6). The claim, despite its deficiencies, would still be barred under the FCA by virtue of the public disclosure bar. The Defendant Grand Lodge respectfully requests this Court grant its Motion to Dismiss with prejudice, and for any such further relief as the Court deems just and proper under the circumstances.

Dated: September 25, 2026

*/s/ Stephen Z. Deinlein*
Stephen Z. Deinlein, Esq., Bar No. 19927
Law Offices of Anthony J. DiPaula, P.A.
34 South Main Street
Bel Air, MD 21014
Phone | 410-893-4255
Fax | 410-893-4277
sdeinlein@dipaulalaw.com

*Attorneys for Defendant Grand Lodge of Ancient Free and Accepted Masons of Maryland*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of September, 2026, a copy of the Defendant's, Grand Lodge of Ancient Free and Accepted Masons of Maryland, Memorandum in Support of its Motion to Dismiss was filed with the Clerk of the Court via the CM/ECF system and copies were served on:

Bruce Ellis Fein, Esquire
Bruce Ellis Fein, PLLC
1105 Park Royal Court
Great Falls, VA 22066
bruce@newdream.net
*Attorneys for the Relator*

*/s/ Stephen Z. Deinlein*
Stephen Z. Deinlein, Esq., Bar No. 19927